LOUIS WOODS, Respondent, v. THE METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 8, 1892.

1. **Railroads**: EVIDENCE OF RULES AND CUSTOM OF PASSENGERS. In an action by a passenger against a street-railway company, for ejecting him from its cars, the defense was that he presented to the conductor a transfer check, which was insufficient, since it was torn in two, and offered to prove the rule of the company requiring the conductor to collect fares in money or by proper ticket or transfer check, and also to prove the custom of the passengers on receiving their checks at the place of transfer, and finding they did not want them to tear them in two and throw them down. *Held*, competent evidence, and its rejection error.

2. ———: CONDUCTOR'S DUTIES: RIGHT OF PASSENGERS. The conductor must have proper evidence of the right of the passenger to carriage, and this right will avail the passenger nothing unless he produce this evidence.

3. ———: ———: EVIDENCE OF PASSENGER'S RIGHT. The conductor cannot stop to investigate the right which a passenger might have aside from the evidence of such right presented to him; and his duty when a passenger is without the evidence of having paid his fare is plain and imperative, to collect the same, or on refusal to pay to put him off, using no more force than is necessary.

*Appeal from the Jackson Circuit Court.*—HON R. H. FIELD, Judge.

REVERSED AND REMANDED.

*Pratt, Ferry & Hagerman,* for appellant.

(1) The jury should have been directed to return a verdict for defendant because a torn transfer check was not proper evidence of plaintiff's right of passage; and this is so, even if the company had not had a rule relating to the same. *Kellett v. Railroad,* 22 Mo. App. 356; 2 Wood's Railway Law, 1394, 1395; *Mosher v. Railroad,* 127 U. S. 390; *Walker v. Railroad,* 15 Mo. App. 333; *Hufford v. Railroad,* 53 Mich. 118; *Frederick v. Railroad,* 37 Mich. 342. (2) The jury should have been directed to return a verdict for defendant, because in accordance with the company's reasonable rules it was not obliged to receive a torn transfer check in payment of fare. This is so, even though under ordinary circumstances a mutilated transfer check would be proper evidence of right of passage. Passengers are bound by the reasonable rules of the company. 2 Rorer on Railroads, 980; *Bebee v. Ayers,* 28 Barb. 275; Wheeler on Carriers, 177–178; *McRae v. Railroad,* 88 N. C. 526; s. c., 43 Am. Rep. 745; *Ripley v. Railroad,* 31 N. J. Law, 393; *Hibbard v. Railroad,* 15 N. Y. 455; *Logan v. Railroad,* 77 Mo. 665; *McGinniss v. Railroad,* 21 Mo. App. 399; *Frederick v. Railroad,* 37 Mich. 342. (3) Appellant's counsel should have been permitted to read to the jury the rules and regulations offered in evidence. The question of exemplary damages depended upon good faith on the part of the conductor. The rules were competent, as tending to show such good faith. *Logan v. Railroad,* 77 Mo. 669; *Fitzgerald v. Railroad,* 50 Iowa, 79; *McGinniss v. Railroad,* 21 Mo. App. 399. (4) Appellant should have been permitted to prove the custom of passengers as to tearing tickets into two pieces and throwing them on the ground. This was competent, as tending to show the reasonableness of the rules and also as tending to show the reason why a torn transfer check was not proper evidence of the right of passage, and as also tending to

show good faith on the part of the conductor. Wheeler on Carriers, 131; *McGinniss v. Railroad*, 21 Mo. App. 399; *Logan v. Railroad*, 77 Mo. 669. (5) Appellant's fifth instruction should have been given. When the conductor requested respondent to get off the car it was his duty to do so, and by resisting he could not acquire any higher right. His damage, if any, could not be enhanced thereby. *Townsend v. Railroad*, 56 N. Y. 295; *Bradshaw v. Railroad*, 135 Mass. 407; *Hall v. Railroad*, 15 Fed. Rep. 61; *Railroad v. Gants*, 38 Kan. 608.

*E. U. Western* and *J. P. Flournoy*, for respondent.

(1) Respondent was unlawfully ejected from appellant's car by its servant and was entitled to damages for the tort. 2 Rorer on Railroads, p. 827; *Perkins v. Railroad*, 55 Mo. 201; *Maleck v. Railroad*, 57 Mo. 17; *Doss v. Railroad*, 59 Mo. 27; *Graham v. Railroad*, 66 Mo. 536; *McGinniss v. Railroad*, 21 Mo. App. 399; *Rouse v. Railroad*, 41 Mo. App. 298; *Carston v. Railroad*, 44 Minn. 454. (2) A railroad ticket is a receipt or voucher adopted for convenience to show that the passenger has paid his fare, and the mere fact that it is torn does not destroy its effect as *prima facie* evidence of such fact. 2 Woods on Railway Law, 1394, 1395; Thompson on Carriers, p. 65, notes, par. 1; *Evans v. Railroad*, 11 Mo. App. 470; *Pier v. Finch*, 24 Barb. (N. Y.) 514. (3) This is not a case where a passenger was without evidence of his right of passage, but a case where he offered sufficient evidence, which was rejected because of a presumption of fraud on his part in obtaining it. A conductor has no right to presume a fraud solely from the fact that a ticket offered him is torn. Granting that all the evidence he could consider was the ticket in the condition it was when offered to him, it raised no presumption of a fraud. *Rumbolds v. Parr*, 51 Mo. 592; *Henderson v. Henderson*, 55 Mo. 534; *Ames v. Gilmore*, 59 Mo. 536. (4) No

rule was offered in evidence by appellant declaring a "Torn transfer check" or one "torn in two" not to be proper evidence of a right of passage. If the rule which it was offered to read to the jury could be given such a meaning by appellant, it would be unreasonable and void, as indefinite and uncertain, and in violation of the right of passengers to be carried, which is superior to any regulation of the company. Thompson on Carriers, p. 306; *Day v. Owens*, 5 Mich. 520; *McGinniss v. Railroad*, 21 Mo. App. 399; *Pier v. Finch*, 24 Barb. (N. Y.) 514; *Saunders v. Railroad*, L. R. 52 B. Div. 456; s. c., 29 Moak's Eng. Rep. 384. (5) Regulations must not only be reasonable in themselves, but must be so published that all persons who are to be affected thereby may have an opportunity of learning of their existence and effect. 2 Amer. & Eng. Enc. of Law, p. 759; *McDonald v. Railroad*, 26 Iowa, 124; *Creed v. Railroad*, 86 Penn. St. 139; *Railroad v. Specker*, Penn. Sup. Ct. 1885; *State v. Campbell*, 32 N. J. Law, 301; *Railroad v. Harris*, 9 Lea (Tenn.) 180; s. c., 42 Amer. Rep. 668; *Pier v. Finch*, 24 Barb. 514; *McClure v. Railroad*, 34 Md. 532; 2 Wood on Railway Law, p. 1397. (6) The offer of appellant to show that passengers who abandon their transfer checks often tear them in two—for that is all their offer amounted to—was properly refused, for there was no issue in this case as to how respondent obtained his check, and no claim that there was any fact or circumstance connected with respondent's use of his check indicating to the conductor that his was such an abandoned check.

ELLISON, J.—Plaintiff was a passenger on defendant's street cable-car line and brought this action for being forcibly ejected from the car. He recovered judgment for $50 damages, and the defendant appeals. The facts are these: The defendant owned two lines of street railway, one known as the Fifth street line and the other as the Eighteenth street line. It issues transfer tickets or checks to passengers on either line

who wish to continue their trip on the other line. The transferring is made at the point of intersection of the two lines, and is done by one of defendant's servants who is stationed at this point giving the passenger a transfer check, which is only good for a continuous ride by the party receiving the check. In this case plaintiff was a passenger on the Fifth street line who paid his fare to the conductor of that line ; wishing to continue his ride on the other line, he alighted at the point of intersection, received of defendant's servant a transfer and then ran and boarded a car on the Eighteenth street line, which was moving off. The ticket or check was complete and entire when he received it, but by some means, not definitely explained (and without the conductor's knowledge) it became torn into two pieces, so that when the conductor asked for his fare he presented him the two pieces. What followed is stated by the plaintiff in his testimony.

"Conductor refused to take the check; he says, 'You will have to pay your fare or get off,' and I said, 'No, I will not pay my fare ; I will leave it to those gentlemen.' He says, 'Yes, you will pay your fare or get off.' I says, 'No, I won't pay my fare, and I won't get off.' I offered him the check. He says, 'You pay your fare or get off.' I says, 'You will have to put me off.' He says, 'I will do that.' Well, I says, 'Then put me off,' and he grabbed me, and I took hold this way of the seat. He took his bell-punch from around his neck and held it with one hand as though he was going to hit me. He drew back as though he was going to hit me, and he says, 'You get off.' I says, 'You put me off.' So, to prevent him, I got off, so he wouldn't hit me with the bell-punch. I kind of eased off from the car, and just as I went to step off he shoved me on the shoulder. This was on the gripcar at Seventh and Delaware streets. The car was full of passengers. The conductor hallooed to the gripman. He said to come there and help to put that nigger off. The gripman

stopped and came back but did not touch me. The conductor shoved me. He had been collecting fares. When he asked me for my fare I gave him the two pieces of the transfer check, and he refused to take them. He told me I would have to get off and I told him he would have to put me off. The conductor took hold of me first, and when I refused to get off the gripman stopped the car. I was trying to stay on; I staid on. I was trying to make him force me off. I refused to get off. I told him he would have to force me off, and he finally got me off. Then the car went on."

Defendant offered to show that passengers getting off the Fifth street line at the place of transfer would frequently take checks from defendant's servant, and then finding that they did not wish to use them by reason of not wanting to wait for a car on the other line would tear them in pieces and throw them down; and that such was the custom. Defendant also offered to prove by the written rules of the company conductors were required to collect fares in money or by "proper ticket or transfer check." Both these offers were refused.

In passing on this case it is necessary to understand the peculiarity of a conductor's duties to his employer, with reference to the right of the passenger. The conductor must have proper evidence of the right of the passenger. The right of the passenger to carriage will avail him nothing unless he can produce this evidence. One may contract with a railway company for the carriage of himself from one point to another and may pay for and receive a ticket evidencing such contract, but if the ticket should be accidentally destroyed, and he should, nevertheless, board a train, and be ejected by the conductor, without unnecessary violence, he could not complain of the act of the conductor. The passenger must produce a proper ticket or else pay the conductor for his carriage. *Frederick v. Railroad*, 37 Mich. 342; *Hufford v. Railroad*, 53 Mich. 118. The ticket presented by this plaintiff was in fact received from

defendant in proper form and for a full consideration paid by plaintiff. But, since this suit is based alone on the alleged wrongful act of the conductor, the question is, in what position did plaintiff place himself to the conductor. He did not offer him a check which was merely torn, but one which was in two pieces, it might as well been three or any other number of pieces which might be put together as one check.

Now in consideration of the fact ( we assume it as a fact since it was offered to be proven ), that it was the custom of many passengers to tear checks in two pieces and throw them down at the place of transfer, so that anyone might pick them up, was it not reasonable that defendant should have a rule requiring a "proper transfer check?" And was it not reasonable and right that the conductor in interpreting such rule refuse these pieces as and for a "proper transfer check?" We think it was and that the proof of the custom and of the rules should have been admitted.

It will occur to all reasonable persons that a conductor, from the very nature of his duties, cannot stop to investigate the rights which a passenger might have aside from the evidence of such right then presented to the conductor. If the conductor should attempt such investigation it would produce confusion, delay and disputes wholly incompatible with the business of a carrier and subversive of the rights of the public to an orderly, certain and speedy performance of the carrier's contract, as well as its duty. A quotation from the opinion of the supreme court of Michigan in *Frederick v. Railroad, supra,* though a case against a steam railway, is applicable here: "The public is interested in having the rules whereby conductors are to govern their actions certain and definite, so that they may be enforced without confusion and without stoppage of trains; and if the enforcement causes temporary inconvenience to a passenger, who by accident or mistake is without proper evidence of his right to

passage, though he has paid for it, it is better that he submit to the temporary inconvenience than that the business of the road be interrupted, to the general annoyance of all who are on the train. The conductor's duty, when the passenger is without the evidence of having paid his fare, is plain and imperative, and it can serve no good purpose and settle no rights to have a controversy with him."

If, therefore, the custom of passengers and the rules of the company be established as offered, the company is not liable for the act of the conductor in demanding fare of plaintiff, and on his refusal to pay to put him off the car, provided he used no more force than was necessary to accomplish that purpose.

Judgment reversed and cause remanded. All concur.