CHICAGO & NORTHWESTERN RAILWAY CO.

v.

ELSA BANNERMAN.

1. COMMON CARRIER—TICKET EVIDENCE OF RIGHT TO TRAVEL—Between the conductor and a passenger, as to the right of the latter to travel, the ticket purchased must be conclusive evidence, and the passenger must produce it when called upon, as evidence of his right to the seat he claims.

2. SAME.—Where appellee's husband bought a non-transferable 1,000 mile ticket and told the agent to issue it to "E. Bannerman," and the agent thinking it was intended for a man, inserted " Mr." before the name, and the ticket was presented by the husband to pay his wife's fare, he stating at the time to the conductor that it was bought for his wife, Elsa Bannerman, and the conductor refused to receive such ticket in payment of the wife's fare, and upon a refusal to pay her fare, put her off at the next station, using no unnecessary force. *Held*, that appellee could not recover damages from the railroad company for such expulsion.

APPEAL from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding. Opinion filed June 25, 1884.

Mr. B. C. COOK, for appellant; cited C. B. & Q. R. R. Co. v. Griffin, 68 Ill. 504; Frederick v. M. H. & O. R. R. Co., 37 Mich. 346; H. & T. C. R. R. Co. v. Ford, 2 Am. & Eng. R. R. Cas. 514; 53 Tex. 364; Thompson on Carriers, 338; Pullman Car Co. v. Reed, 75 Ill. 130; Johnson v. Concord R. R. Co., 46 N. H. 213; Borie v. Hudson R. R. Co., 61 Borle, 611; Deetretch v. Penn. R. R. Co., 71 Penn. State, 432; Wakefield v. S. B. R. R. Co., 117 Mass. 544.

Mr. ELI B. FELSENTHAL, for appellee.

WILSON, J. This was case, brought by appellee against the Chicago and Northwestern Railway Company, to recover damages for expelling her from appellant's train of cars. There was a jury trial, resulting in a verdict for the plaintiff for $500, of which the plaintiff remitted $250, and had judgment for the balance.

There is no material dispute as to the facts. Appellee, in company with her husband, Daniel Bannerman, took the train at Evanston for Crystal Falls, Michigan. Bannerman tendered to the conductor a special 1,000 mile commutation ticket, out of which to take appellee's fare. The ticket on its face purported to be issued to "Mr. E. Bannerman." The conductor told him it was not a lady's ticket, and that under his instructions he could not receive it in payment of appellee's fare; that she would have to pay her fare or leave the train. He offered to give her a receipt for the money, saying, if it was not all right, the money would be refunded at the office. She desired her husband to pay her fare, which he declined to do, and neither appellee nor her husband paying her fare, nor offering to pay, she was put off the train at Waukegan, a regular station on defendant's road. No more force was used in expelling her than was necessary, and it is not claimed that she received any physical injury in consequence of her expulsion.

Attached to and constituting a part of the ticket, was a printed agreement (except the name of the person to whom it was issued, which was written), by the terms of which it was stipulated in substance that the company would carry the passenger at a reduced rate, in consideration of the purchase by the latter of a non-transferable 1,000 mile ticket, such ticket not to be good unless signed in ink by the person to whom it was issued. It appeared from the evidence that the ticket in question was purchased by appellee's husband, but not in her presence; that at the time he purchased the same, he did not disclose to the company's agent of whom he bought it that it was for a lady, but when asked by the agent to whom it was to be issued, he only replied, " E. Bannerman," and the ticket was thereupon filled up with the name, " Mr. E. Bannerman." The agent was not informed, nor had he any knowledge that the ticket was intended for a woman; neither had the conductor any knowledge or information on that subject other than what appeared on the face of the ticket, except that he was told by appellee's husband at the time it was offered to the conductor, that it was bought for her. It was unsigned when presented, but appellee testified that she offered to then sign it.

The defendant requested the court to instruct the jury in substance that if at the time when the conductor asked the plaintiff for her fare, she, or some one acting for her, presented to him the 1,000 mile ticket introduced in evidence, and the conductor informed her that he could not take her fare out of such ticket, and that she would have to present a different ticket or pay her cash fare or leave the train, and that she or the person acting for her refused to pay any fare whatever unless the fare should be taken out of such 1,000 mile ticket, and that the conductor declined to take her fare out of such ticket, he had a right to expel her from the train, using no unnecessary force. The court refused to so instruct and the defendant excepted.

The contract arising on a ticket like that under consideration is one which persons may lawfully enter into, and when made with a full knowledge of its conditions as expressed up-

on its face, is valid and binding upon the parties thereto. Commutation tickets of this nature have come into very general use, and are found to be of much practical benefit as well as convenience to commercial and other travelers by railway. They are based upon sufficient reciprocal considerations, the railroad companies agreeing to carry at reduced rates, and the purchaser agreeing that the ticket is not to be used by any one but himself, and further, that he will sign his name to the contract in ink before presenting it for passage, and will identify himself by his signature whenever so required by the conductor. These conditions are reasonable and just, both to the companies and to the traveling public.

Both appellee and her husband testified that they knew all the terms and conditions of the ticket at the time of presenting it to the conductor. There was nothing on its face to indicate that it was for a woman; on the contrary it affirmatively appeared to be a ticket for a man. The name was not simply E. Bannerman, but Mr. E. Bannerman, and the word "Mr." indicated only a man. The conductor was therefore justified in assuming that appellee was not the person designated in the ticket.

Nor was he required to take the testimony of appellee's husband that the ticket was purchased for his wife. As was said in Frederick v. M. H. & O. R. R. Co., 37 Mich. 342, " How then is the conductor to ascertain the contract entered into between the passenger and the railroad company, where a ticket is purchased and presented to him? Practically there are but two ways: one, the evidence afforded by the ticket; the other, the statement of the passenger, contradicted by the ticket. Which should govern ? * * * There is but one rule which can safely be tolerated with any decent regard to the rights of railroad companies and passengers generally. Between the conductor and passenger, as to the right of the latter to travel, the ticket purchased must be conclusive evidence, and he must produce it when called upon, as evidence of his right to the seat he claims," and see numerous cases there cited.

In C. B. & Q. R. R. Co. v. Griffin, 68 Ill. 504, the Su-

preme Court said: "The evidence tends to prove the mistake occurred at Mendota through the inadvertence of the ticket agent in giving out the wrong ticket; if so, the conductor was right in demanding fare a second time. He was not bound to rely upon the statements of appellee that he had paid his fare to the station to which he had been carried. It was the duty of appellee to pay the fare demanded, and if the company refused to make reparation for the indignity to which he had been exposed in being compelled to repay his fare, he could maintain an appropriate action. The conductor must necessarily have the supervision and control of the train, otherwise there would be no protection to the lives and comfort of travelers." See, also, Pullman Car Company v. Reed, 75 Ill. 125.

In Yorkton v. M. L. & W. Ry. Co., 54 Wis. 234, where a passenger failed to procure a stop-over ticket, through the fault of the conductor, and was expelled from the train by another conductor upon refusal to pay fare, it was held that no action would lie against the company for such expulsion. And see also cases cited in Thompson on Carriers of Passengers, 338.

In the recent case of Pennsylvania R. R. Co. v. Connell, reported in Legal News of June 14, 1884, the Supreme Court, reversing the judgment of this court, hold (if we do not misapprehend the scope of the decision), that even where a passenger presents to the conductor a ticket which has been duly issued to him by the company's authorized agent, upon the payment of full fare, and which entitles him to be carried over the company's road, it is the duty of such passenger, when notified by the conductor that he will not receive the ticket, to pay his fare under protest, or leave the train without compelling the conductor to resort to force to expel him, and that he can not recover for the force, which, by his resistance, it became necessary for the conductor to resort to, in order to expel him. In that case the passenger had bought a through ticket from Omaha to New York, over various connecting lines, including the Baltimore and Ohio and the Pennsylvania companies. On reaching Philadelphia he took

the cars of the Penn. R. R. Co. for New York. The conductor declined to receive his ticket, informing him that by reason of some difficulty between the Pennsylvania company and the Baltimore and Ohio, his orders were to no longer honor tickets reading via the latter road. It appears that Connell purchased the ticket at Omaha from a person authorized to sell tickets via the Baltimore and Ohio and the Pennsylvania roads; that he paid full fare therefor, and that at the time of purchasing the ticket and presenting the same to the conductor, he had no knowledge of any change in the relations existing between the two companies. Refusing the conductor's demand to pay fare, he was put off the train by force, receiving, in consequence of his resistance, serious physical injuries, for which he brought suit.

The Supreme Court held that he was not entitled to recover damages for the force which produced his injuries. Craig, J., in delivering the opinion of the court said: " Conceding that appellee, by virtue of his ticket, was entitled to be carried over appellant's road, the question presented is whether he can recover damages for being forcibly expelled from the train, or was it his duty when notified by the conductor that he would not receive the ticket, to pay his fare under protest or leave the train, and hold the company responsible for the expulsion, without compelling the conductor to resort to force. Had appellee paid the fare demanded, he could have sued the company and recovered for a breach of the contract. Had he left the train when the conductor refused to receive the ticket and ordered him to leave, he might have sued and recovered for all damages sustained in consequence of the act of the conductor expelling him from the train; but can he recover for the force used by the conductor which he by his own act induced the conductor to resort to in order to put him off the train?" While the writer of this opinion finds it difficult to yield his assent to the doctrine of the Connell case, it must nevertheless be accepted as of binding authority, coming as it does from the court of last resort.

In the light of the foregoing and other cases of like import, we are of opinion that the defendant's refused instruction

Glade v. Schmidt.

was substantially correct and should have been given, and we are further of opinion that under the facts shown, appellee was not entitled to recover. It was the duty of her husband when purchasing the ticket, if it was intended to be used by his wife, to have so informed the agent of whom he bought it. Common fairness to the company's conductors, who are placed, as it were, between two fires, required this to be done.

The judgment must be reversed and the cause remanded for a new trial.

Reversed and remanded.