## Pittsburgh, C., C. & St. L. Ry. Co. v. Samuel H. Daniels.

1. CARRIERS OF PASSENGERS—*Ticket Produced is Conclusive Evidence of Right to Travel.*—As between the conductor and passenger and the right of the latter to travel, the ticket is conclusive evidence, and he must produce it when called upon, as evidence of his right to the seat he claims.

2. PASSENGERS—*Where Ticket is Temporarily Lost.*—Where a passenger who had purchased a sleeping car ticket, but who had temporarily lost it in the car, was removed from the sleeping car because he could not produce his sleeping car ticket when it was called for, and the ticket was afterward found, he was held to be entitled to recover only the price of the ticket.

3. SAME—*Rule Requiring the Passenger to Exhibit a Ticket.*—The rule requiring the passenger to exhibit a ticket or pay fare is reasonable and just; the conductor owes the duty to his employer to enforce it, and to eject passengers failing to comply therewith. The performance of this duty is a lawful act of the conductor, unless unnecessary force or violence is resorted to by him, and resistance by the passenger to such lawful act is a wrong on his part. Under such circumstances a passenger has no right to repel force with force, and invite an assault, and the struggle which might ensue.

4. SAME—*Duty of Conductor in Regard to Explanations as to an Improper Ticket.*—The conductor can not be expected to accept explanations of the passenger in regard to an improper ticket which he produces, or when he fails to produce any ticket whatever.

5. PRACTICE—*In an Action for the Alleged Refusal or Neglect of a Ticket Agent.*—An action in case will lie for the alleged refusal or neglect of a ticket agent.

Action in Case.—Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded. Opinion filed July 5, 1900.

Statement by the Court.—This is an appeal from a judgment for $200, rendered in an action on the case by appellee against appellant. By agreement of the parties the cause was tried by the court without a jury. Appellee testified that September 11, 1897, he purchased from the agent of appellant at Eaton, Ohio, a mileage book or ticket. The ticket has a number of conditions attached to it, which were signed by appellee. Following is a copy of the ticket, with such of the conditions as are necessary to be considered on this appeal:

"C. P. A. INTERCHANGEABLE 1,000 MILE REBATE EXCHANGE TICKET. P. L. 3605.

" The contract and conditions under which this ticket is issued and sold are as follows:

" 1.    The original purchaser, whose signature is affixed to the contract bearing the same form and number as this ticket, and who is therefore the only lawful owner thereof, is entitled to receive 1,000 miles of transportation in exchange tickets over the lines named on back cover under their local regulations, and subject to all of the conditions of the contract.

" 2.    This mileage ticket will not be honored on the train nor in checking baggage, but must be presented at the ticket office by its original purchaser and lawful owner, and there exchanged for a continuous passage ticket, which will be honored in checking baggage and for passage when presented in connection with this mileage ticket.

" 8.    This ticket must be presented to conductor with the exchange ticket received from the ticket agent. An exchange ticket will not be accepted for passage unless it is accompanied by the mileage ticket upon which it was issued.

" 11.    The further stipulations and conditions printed on the covers of this ticket constitute and form a part of this contract.

" The above contract conditions are the same as have been signed by the original purchaser and lawful owner of this ticket and filed with the commissioner."

September 24, 1897, appellee was in Eaton, Ohio, and desired to go from that place to Xenia, Ohio. He testified that he arose from his bed at his hotel about the time the train was due at Eaton, 4:49 or 4:59 A. M., he forgot which; that he was a little late; that when he reached the depot he

went to the window of the ticket office and rapped, when a boy about twenty years old came to the window, when he, appellee, presented his mileage book and asked for a ticket to Xenia; that the boy said he could not give him a ticket to Xenia, but could give him one to Hamilton, when appellee said, "Very well, give me one for Hamilton;" that the boy thereupon took appellee's ticket, went back in the office and sat down; that the boy, who was acting as ticket agent, kept the mileage book about five minutes, and then some one came and said the train was coming, when the boy handed the mileage book back to appellee, saying that he hadn't time to make out the ticket, and that appellee would have to wait for the next train, when appellee told him that he couldn't wait, that his business was important, and that he must go on that train. Appellee further testified that the train was about twenty minutes late, and that he was at the depot at least fifteen minutes before it started from Eaton. Two witnesses corroborated appellee as to what passed between appellee and the ticket agent, and one of them testified that about twelve minutes intervened between the time appellee handed his mileage book to the agent and the time the train started; another, that about seven or eight minutes intervened. Appellee further testified that had he gone on that train, he could have reached Hamilton that morning in time to make the connection to Xenia, but that the next train was due at Eaton an hour later, and that by it he could not reach Hamilton in time to make connection with the train from that place to Xenia. Appellee, after his conversation with the ticket agent, got on the train. He was questioned and answered as follows:

Q. "What did you do when the train started?" A. "I saw the conductor coming to the door, and I raised up in my seat, and I said, 'Conductor, I am in a peculiar position; I haven't got my ticket, but I have mileage here and wouldn't you be kind enough to either tear out the mileage or stop at Camden and let me get a ticket?'"

Camden is a station ten miles from Eaton on the route to Hamilton. Appellee also explained to the conductor the circumstances of his attempt and failure to procure a ticket.

The conductor said, " If you haven't got a ticket, I will have to put you off the train." Nothing more was said and appellee remained seated till the train reached Camden, when it stopped, and the conductor put his fingers on appellee's shoulder and asked him if he was going to get off. Appellee said no, not until he was put off. Appellee says :

" He took me by the arm; I didn't hesitate very much, but when he took me by the arm, he started to walk behind me until I got off the train. I told him that I must get that train to Xenia, because I had a special sale that day, and that I would be put to a great damage if I didn't get there, as my store was locked, and would remain locked if I didn't get there. He said nothing and I said nothing about paying a cash fare."

Appellee got off at Camden. The next train did not stop there, and he did not reach Hamilton until about eleven or twelve o'clock that day. Appellee was employed in the piano business with W. W. Kimball in Chicago, and had a number of pianos to sell, which were stored in a room rented for that purpose by appellee in Xenia, Ohio, and which had been advertised for sale at that place at nine o'clock A. M. September 24, 1827, and continuously through that day.

The only evidence as to damage occasioned by delay in not getting to Xenia at the hour fixed for the commencement of the sale, was the following in appellee's examination :

Q. " Do you know what you lost by reason of not being in Xenia in time for the sale ?" A. " I can't say specifically."

George Willard, attorney for appellant.

James C. McShane, attorney for appellee.

Mr. Presiding Justice Adams delivered the opinion of the court.

By the declaration the pleader seems to rely on two causes of action : the alleged refusal or neglect of the ticket agent to give appellee an exchange ticket in accordance

with provision 2 of the contract, and the expulsion of appellee from the train by the conductor. Can the appellee recover damages on account of being compelled by the conductor to leave the train? One of the rules of the company, which is also a part of appellee's contract, is that a mileage ticket, such as that in question, will not be honored on a train or in checking baggage, but must be presented by the purchaser at a ticket office, and there exchanged for a continuous passage ticket, and that the mileage ticket must be presented to the conductor with the exchange ticket received from the ticket agent. That appellee knew that such was the rule, is shown by his own evidence, namely, that he tried to procure an exchange ticket from the ticket agent, and that when the train started, he told the conductor that he was in a peculiar position, that he hadn't a ticket. On his cross-examination he testified that it was his custom to get a ticket. Appellee not having an exchange ticket, and not offering to pay his fare, it was lawful for the conductor to put him off the train. In Chicago & N. W. Ry. Co. v. Bannerman, 15 Ill. App. 100, the court quote with approval the following from Frederick v. M. H., etc., Ry. Co., 37 Mich. 342.

" As between the conductor and passenger, and the right of the latter to travel, the ticket produced must be conclusive evidence, and he must produce it when called upon, as evidence of his right to the seat he claims."

Cogent reasons are given for this rule in the Michigan case. In C., B. & Q. R. R. Co. v. Griffin, 68 Ill. 499, the court substantially announces the same rule, saying :

" The evidence tends to prove the mistake occurred at Mendota, through the inadvertence of the ticket agent in giving out the wrong ticket. If so, the conductor was right in demanding fare a second time. He was not bound to rely upon the statements of appellee that he had paid his fare to the station to which he desired to be carried."

In Pullman Palace Car Co. v. Reed, 75 Ill. 125, a passenger who had purchased a sleeping-car ticket, but who had temporarily lost it in the car, was removed from the sleeping-car to another car by the conductor, because he could

not produce his sleeping-car ticket when it was called for. The ticket was afterward found in the car. Held, that he was only entitled to recover the price of the ticket, $1.50. See also, C. & A. R. R. Co. v. Willard, 31 Ill. App. 438, and Penn. R. R. Co. v. Connell, 112 Ill. 295. In the former case the court say:

"The rule requiring the passenger to exhibit a ticket or pay fare being reasonable and just, the conductor owes the duty to his employer to enforce it, and to eject the passenger failing to comply therewith. The performance of this duty is a lawful act of the conductor, unless unnecessary force or violence is resorted to by him, and resistance by the passenger to such lawful act is a wrong on his part. Under such circumstances he has no right to repel force with force and invite an assault and the struggle which might ensue," citing numerous authorities.

In a note to Thompson's Carriers of Passengers, p. 338, it is said:

"The conductor can not be expected to accept explanations of the passenger in regard to an improper ticket which he produces, or when he fails to produce any ticket whatever," citing a number of cases.

Appellee testified that on some other occasions he had ridden on his mileage ticket, conductors having taken coupons therefrom for his fare; but even if it be true that some other conductors violated their duty in this regard, this would not have justified the conductor in question in carrying appellee without an exchange ticket or cash fare. The evidence falls far short of proving that it was the custom to accept coupons from such a ticket as appellee's in payment of fare, even if such custom would avail appellee as against his express contract.

We think it clear, from the authorities cited, and numerous others which might be cited, that there can be no recovery by appellee for his expulsion from the train. He took the train, well knowing that, in accordance with the terms of his contract, he was liable to expulsion, and no physical force appears to have been used in expelling him. The record contains no evidence of any pecuniary loss or damage to appellee by reason of his having been delayed in

his journey by the alleged refusal or neglect of the ticket agent to furnish him with an exchange ticket, and although there may have been such loss or damage, yet, there being no evidence on which to base an assessment of it, the judgment can not be sustained. Appellant's counsel contends that the action should be assumpsit, and not case, and that there can be no recovery in case. We are of opinion that case will lie for the alleged refusal or neglect of the ticket agent. 1 Chitty's Pl., 9th Am. Ed. 135.

Whether there was unreasonable refusal or neglect is a question of fact to be determined from the evidence.

Appellant's counsel excepts to the refusal of the court to hold appellant's fourth and fifth propositions as law, which propositions are as follows:

"4th.  Under the evidence in this case the said conductor was not legally bound to accept coupons from said mileage ticket in payment of plaintiff's fare on said train.

"5th.  The conductor of the train in question was bound to conform to the conditions and requirements of the mileage ticket presented by the plaintiff, and in the absence of a proper order by the defendant, Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, was not bound to accept or comply with any request which would compel him to deviate from said conditions and requirements."

These propositions state the law, and their refusal was error.

The judgment will be reversed and the cause remanded.