St. Louis, Iron Mountain & Southern Railway Company

*v.* Baty.

Opinion delivered November 30, 1908.

1. Carriers—mistake in ticket—expulsion of passenger.—A railroad company is responsible to a passenger improperly expelled from its train on account of a mistake on the face of his ticket which was due to the negligence of the agent who issued it.   (Page 286.)

2. Same—expulsion of passenger—measure of damages.—A passenger wrongfully expelled from a passenger train may recover all compensatory damages resulting therefrom, such as for delay in completing his journey and for such humiliation as he suffered in being put off, but he cannot recover punitive daamges unless the element of malice, recklessness or wantonness entered into the motive with which the injury was done.   (Page 287.)

3. Same—damages for expulsion—excessiveness.—Where a passenger was expelled from a train, without circumstances of aggravation, solely on account of error in the making out of his ticket, and by reason thereof lost a valise which, with its contents, was worth $66, and was delayed several hours before taking another train, a judgment awarding $1,000 as compensatory damages is excessive, and will be reversed unless a remittitur of $750 is entered.   (Page 289.)

Appeal from Miller Court; *Jacob M. Carter,* Judge; affirmed with remittitur.

#### STATEMENT BY THE COURT.

This is an action for tort brought by W. H. Baty against the St. Louis, Iron Mountain & Southern Railway Company to recover damages for an alleged wrongful expulsion from one of its passenger trains.

W. H. Baty has resided in and near Neches, Texas, for the past twelve years. His family consists of himself, wife and two children.   In 1906 he contemplated making a trip with his fam-

ily to Hot Springs, and made inquiry of the local agent of the International & Great Northern Railroad Company. He also talked with the assistant general passenger agent of said railroad, who stated to him that his railroad sold a ninety-day ticket, good from Palestine, Texas, to Hot Springs, Arkansas, and return, for $16.65. On the 2d day of April, 1906, he purchased at Palestine from Mr. Armes, assistant ticket agent, four round-trip tickets, asking at the time for 90-day tickets, and paying $16.65 for each ticket. At the suggestion of the agent, he signed all four of the tickets. He received his tickets a very few minutes before the train on which he left for Hot Springs started, and at once boarded his train with his family. They went to Hot Springs, using the tickets so purchased. On his arrival at Hot Springs he deposited the tickets in a bank for safe-keeping. His wife and boys desiring to return home first, he went to the bank and took the tickets out. In looking over them, he discovered how they were punched, and carried them to the local railroad agent, and asked him if they were good for ninety days. Upon being informed that they were only good for 60 days, he sent back the tickets by registered mail to the agent at Palestine, called his attention to the mistake, and asked that they be extended to 90 days. The agent at Palestine complied with his request by again punching the ticket so as to show that the return limit was 90 days, and returned the tickets to him. He gave his wife and boys three of the tickets, and they returned home, using them for passage. When Baty got ready to return, he carried the remaining ticket to the local railroad agent, and had him to sign and date it. He commenced his return journey on the 17th day of June, 1906, by taking passage on a train of the Little Rock and Hot Springs Railway to Benton, Arkansas. His ticket called for passage from Benton to Texarkana over defendant's line of road. At Benton he embarked on one of defendant's trains for Texarkana. The train auditor took up his ticket, told him that it was for a female, and that he could not ride on it. Baty offered to write his name, and to telegraph to the ticket agent at Palestine, with whom he was well acquainted, as a means of identification. The auditor refused these offers of identification, telling him that the ticket was for a female passenger, and that he could not honor it.

When the train arrived at Malvern, Baty was ejected by the auditor and other members of the train crew. His valise was thrown on the platform beside him, and, there being a crowd around him, it was lost in the confusion, and has not yet been found. The value of the articles in the valise amounts to $66.10. He stopped at Malvern several hours and then took another train home, paying his fare, the exact amount of which he does not remember. This is substantially the statement of the whole transaction as testified to by the plaintiff, W. H. Baty.

The ticket provides that it is void for passage if any alterations or erasures are made on it, or if more than one date is cancelled.

The ticket also provides that it is not transferable, and that, to prevent imposition, the holder must identify himself or herself as the original purchaser to the satisfaction of any conductor or agent by signature or otherwise when requested. It also provides that it shall not be good for return passage unless the holder identifies himself or herself by signature on back thereof and otherwise as original purchaser to the satisfaction of the agent of the terminal line at destination of ticket, and when officially signed and stamped by said agent it shall then be good for return passage of the original purchaser.

The ticket also contains the following: "I acknowledge the description as indicated by the words opposite the punch marks which appear in the margin hereof as being a correct description of my personal appearance."

(Signed) "W. H. Baty,
"Original Purchaser."

The punch marks in the margin appeared on the words "female," "stout," "medium," "dark." The plaintiff was five feet nine inches high, and weighed about 170 pounds. His wife was low, weighed about ninety-seven pounds, and had dark colored hair.

W. J. Taylor testified that he is now and was in April, 1906, local agent of the International & Great Southern Railroad Company at Palestine, Texas. That there was on sale in his office on the 2nd day of April, 1906, tickets good for first-class passage from Palestine, Texas, to Hot Springs, Ark., and return; said tickets read *via* International and Great Northern Railroad Com-

pany, Texas & Pacific Railroad, St. Louis, Iron Mountain & Southern Railway Company, and Little Rock & Hot Springs Western Railway Company. That the rate of said tickets was $16.65, and the time limit within which to make the return trip was 90·days. That, if a shorter limit was made, it was a mistake. That he did not issue the tickets in question. That his office record shows that they were issued on the 2nd day of April, 1906, and they must have been issued by his assistant, W. S. Armes.

H. E. Martin testified that he was the superintendent of the Little Rock & Hot Springs Western Railway Company. That a part of the business of the ticket agents on his road was to sign coupon tickets. That they had authority to sell tickets over the lines of connecting carriers, and over any other road in America or Canada.

V. L. Wagner testified that he was the train auditor who put plaintiff off of the defendant's train at Malvern. He detailed the circumstances substantially as follows: When the train left Benton, he went through it in the discharge of his duties. The plaintiff presented him a return-trip ticket, reading from Benton to Texarkana. He told plaintiff that it was a ladies' ticket, and that he could not ride on it. Plaintiff replied that his wife and children had gone on, and he supposed he had the tickets mixed. The auditor refused to let him ride on the ticket, and when the train arrived at Malvern put him off. He said that the plaintiff had money with which to pay his fare, and that he did not let the plaintiff ride on the ticket because it was out of date, and because it was for a female passenger.

Other witnesses testified at the trial, but their evidence is either corroborative of that abstracted, or is not material to the issues raised. Hence it will not be necessary to abstract it.

There was a jury trial and a verdict for the plaintiff in the sum of one thousand dollars.

The defendant has duly prosecuted its appeal to this court.

*T. M. Mehaffy* and *J. E. Williams,* for appellant.

1. The conditions in the ticket were binding upon plaintiff; · they were reasonable, and must be complied with. 132 U. S.

132-140; 2 Hutch. on Car. (3 Ed.) § 1054; 28 A. & E. Enc. Law (2 Ed.) p. 179, § 11 and cases cited; 134 Mich. 391; 96 N. W. 925.

2.   Plaintiff was not entitled to recover for any humiliation or damage for being ejected, as he brought it about by his own negligence. 40 Ill. 503; 21 *Id.* 188; 79 S. W. 642; 2 Hutch. on Car. § 1061; 37 Mich. 342; 52 S. W. 1067; 37 A. M. St. 354; 52 Fed. 197; 17 L. R. A. 800; 79 Ark. 484; 43 *id.* 136; 62 *id.* 357; 83 Md. 245; 179 Mass. 247; 117 Ala. 415, headnote 6; 97 Md. 563; 63 Ala. 1087; 189 Ill. 384; 123 Mich. 247; 34 W. Va. 65; 68 Ill. 499; 37 Mich. 342.

3.   The verdict is excessive, as plaintiff was guilty of negligence which brought about the confusion resulting in his ejection.

*W. H. Arnold, Gregg & Brown, Hart, Mahaffy & Thomas,* for appellee.

1.   If there was any mistake, it was made by the agent of the company at Palestine, and the company is liable.   45 S. W. 1025; 102 *Id.* 380; 79 *Id.* 1187; 94 *Id.* 1093.

2.   The face of the ticket does not control if the agent issuing the ticket is at fault.   71 Tex. 491; 64 Mich. 631; 31 N. W. 544.

3.   The damages are not excessive.   102 S. W. 391.   Humiliation, shame and mortification, besides loss of time, baggage and money paid out, are all elements of damage, and entitle appellee to every dollar of the judgment.

Hart, J., (after stating the facts.)   The objection of counsel for appellant to the instructions given by the court, and their insistence that the instructions asked by them should have been given, are both based upon the same proposition, and that is that the face of the ticket presented by the passenger was, as to the train auditor, conclusive of the terms of the contract of carriage between the passenger and the railroad company.

The precise question has been determined adversely to their contention by this court in the case of *Hot Springs Railroad Co.* v. *Deloney,* 65 Ark. 177.

In that case the plaintiff purchased from the defendant agent at Hot Springs, Arkansas, a ticket for passage of himself

from Hot Springs to Atkins, the agent having authority to sell tickets over the defendant's line to Malvern and the connecting line extending from there to Atkins. In making out the ticket the agent left off or omitted the coupon or that part of the ticket calling for passage from Hot Springs to Malvern. The plaintiff did not discover the mistake and embarked on defendant's train for Malvern. The conductor refused to accept the ticket, and plaintiff was ejected for nonpayment of his fare. He brought suit against the railroad company for wrongful expulsion from its passenger coach; and the same defense was made as is done in this case.

The court referred to the conflicting decisions on the question, citing the leading cases on each side, and then said:

"Some modifications of the rule, as contended for by each party to the controversy, have been attempted, but efforts to reconcile the two have not so far been crowned with any great degree of success. There is this much to be said, however, and that is that the tendency of more recent decisions is towards at least a conservative view of the principle contended for by appellee's counsel; and we adopt that in this case, towit, that, notwithstanding the conductor has only carried out the company's rules and regulations, and these are reasonable, and he therefore may be exonerated from blame personally, yet, as the company, through its ticket agent acting for it, was guilty of doing that which produced all the injury the plaintiff may have suffered from being put off the train, it is liable for such, and can not shield itself behind the faithfulness of its servant, the conductor, for its negligence in not delivering a proper ticket to the plaintiff, and has not only injured the plaintiff, if indeed he was injured, but placed the conductor in the attitude of participating in the wrongdoing, while yet performing his duty personally, while of course ignorant of the wrong done to the plaintiff, if any was done."

Continuing, on the measure of damages, the court said: "We think, therefore, that plaintiff is entitled to all damages that may have grown out of his expulsion; such as for the delay in completing his journey, for the time and trouble of having to walk back to the Hot Springs, depot, and for such humiliation as

he was made to undergo by being put off. These damages are all, however, only compensatory, unless the element of malice, recklessness or wantonness entered into the motive with which the injury was done, if done at all."

In the case of *Little Rock Railway & Electric Company* v. *Goerner,* 80 Ark. 158, there is language used in the opinion which is in seeming conflict with the rule announced in the Deloney case. But in that case the complaint alleged that the conductor of the street car used insulting language to the plaintiff, assaulted him, and that unnecessary force was used in removing him from the car. The court held that under such circumstances the plaintiff was entitled to recover punitive as well as compensatory damages. The language referred to was used in discussing whether the plaintiff was entitled to punitive damages under the allegations of the complaint, and was not necessary to a determination of that question. The Deloney case was nowhere referred to in the opinion, and the rule announced by it was not involved by the issue raised in the Goerner case. Hence so much of the language of the opinion in the Goerner case as may be construed to be in conflict with the rule established in the Deloney case is *obiter*.

As stated by the court in the Deloney case, the question whether "a conductor, collecting tickets and fares, is justified in relying solely upon the face and appearance of the ticket to determine his duty as to the acceptance of the same, and as to his expulsion of a passenger for refusing to pay fare, in case of his rejection of the same, has given rise to one of the most protracted discussions in all the domain of the law pertaining to the relative duties of carriers and passengers."

The direct question was involved in that case, and the issue was fully presented by able counsel on both sides. No new or additional reasons are given to cause the court to recede from the rule there established. Whatever may be the rule elsewhere, the question may be considered settled in this State.

The undisputed evidence shows that the additional punch marks were made by the agent of the initial carrier who sold the ticket, and that they were made to correct a mistake as to its time limit made by him in issuing it. There was also sufficient evidence to warrant the jury in finding that the description of

the original purchaser as a female was a mistake made by the agent who issued the ticket, and that there was no negligence on the part of appellee in presenting it for passage. He had purchased four tickets to be used respectively by his wife, himself and their two children. Of course, the jury might have found that he had got his ticket mixed up with that of his wife. On the other hand, they might have found, as they did find, that the agent in issuing the ticket made the mistake. The description was indicated by punch marks opposite the words. The rest of the description, as indicated by the punch marks, fitted the appellee, and not his wife. The other ticket had been accepted as passage for his wife without question.

We think the issues were fairly presented to the jury under proper instructions, and that no errors of law were committed in the trial.

Counsel for appellant also raise the question that the damages are excessive. In this we think they are correct. The jury returned a verdict for $1,000. The circumstances under which Baty was ejected show that the servants of the railway company were actuated by no other motive than what they considered a proper discharge of their duties. Baty had the money with which to have paid his fare. He was given an opportunity to do so. He was told that he was ejected solely on the ground that under the rules and regulations of the company they could not accept his ticket for passage.

A careful consideration of the testimony convinces us that it does not warrant a verdict for exceeding $250.

In this case there is no error of the court in the proceedings below, and we require the plaintiff to remit down to an amount that we would be willing to approve, if the jury had returned a verdict for that amount. If the plaintiff will within two weeks remit the judgment down to $250, the judgment will be affirmed; otherwise it will be reversed, and the cause remanded for a new trial.