ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* BROWN.

Opinion delivered December 13, 1909.

CARRIERS—EXPULSION OF PASSENGERS—DAMAGES.—A passenger is not entitled to recover damages for his expulsion from a train after he had tendered a mileage book or ticket for passage between points within the State, if at the time he entered the train he knew that it was a condition of the issuance of such mileage book that it could not be used for passage between intrastate points after the rate of fare in the State was raised to three cents per mile, and he knew that such raise had been made.

Appeal from Clark Circuit Court; *Jacob M. Carter,* Judge; reversed.

STATEMENT BY THE COURT.

This is an action of tort brought by C. L. Brown against the St. Louis, Iron Mountain & Southern Railway

Company to recover damages for ejection from one of its passenger trains.

Plaintiff was a citizen of Arkadelphia, Arkansas, which is a station on defendant's line of railroad. On Saturday night of the 17th day of October, 1908, a clerk at the railroad office at said station came into the hotel where Brown was eating supper. Plaintiff asked him what he had in the way of mileage when the three cent rate went into effect. The clerk said that they would sell him a thousand miles for two cents per mile, and Brown replied that he would take it on Monday. On Monday morning, the 19th inst., the day after the three cent rate went into effect, Brown went to the station and asked the agent what he had in the way of mileage under the three cent rate, and the agent replied: "I will give you a thousand miles for two cents." Brown paid the agent $20 and received a thousand mile ticket or mileage book. The mileage book contained the following printed provisions: "Sec. 10. If the maximum rate of three cents per mile is charged in any of the following States, namely, Nebraska, Kansas, Oklahoma, Missouri, Illinois or Arkansas, this ticket will not be honored thereafter for passage in any such State or States, but will be redeemed."

Plaintiff was received as a passenger on defendant's trains on this ticket or mileage for three days without question. Plaintiff says that when he bought the mileage book nothing was said to him about it only being good for interstate passage. That he never read the conditions on it until 3 or 4 days after its purchase. That he was refused passage on one of defendant's trains between points in the State of Arkansas after he had ridden on it for three days. That he then went to the agent to have it redeemed, and that the agent told him that he could not redeem it, but would have to send it in to the general offices at St. Louis, Mo., for redemption. The agent said that it would probably take three weeks. Plaintiff wanted to go to Texarkana at once, and refused the offer.

On the 27th of October, 1908, plaintiff boarded a southbound passenger train of defendant for Texarkana, and the mileage book was honored. On the 29th inst. he boarded the north-bound passenger train of defendant to return to Arka-

delphia; when the train auditor came around to take up tickets, he refused to receive the mileage book for passage, and told plaintiff that the train stopped at Hope, and that he would have to get off there unless he paid his fare. When the train reached Hope the train auditor took plaintiff's baggage from the train, and plaintiff at the command of the auditor got off the train. Plaintiff admits that he knew the conditions in the mileage book as to it not being good for passage between points in this State when he boarded the train at Texarkana for Hope on the day he was ejected from the train; but, as above stated, he did not know it when he purchased the mileage book. On the 30th inst. plaintiff boarded defendant's train at Hope for Arkadelphia, and the train auditor refused the mileage. Some words passed between him and the plaintiff about it, and the matter was referred to the conductor, who advised that it be honored in order to save the railway company trouble. He was then permitted to ride to Arkadelphia. The railroad ticket agent at Arkadelphia testified that plaintiff wanted to buy the book before the three cent rate went into effect, and wanted to come down to the station on Sunday and pay for it. The agent told him that he could wait until Monday, the 19th, and that he would date the book the 18th at the time the book was bought. The agent testifies that he said to defendant: "I don't know whether this book will do you any good or not. They may not accept it. If they don't, though, you can get your money back on it." Plaintiff denies that this was said to him. The agent further says that when he learned that plaintiff was going to bring this suit he wired the general passenger agent for instructions, and that, pursuant to the instructions received, he redeemed the mileage book.

The jury returned a verdict for the plaintiff for the sum of $50, and the defendant has appealed from the judgment rendered on the verdict.

*Kinsworthy & Rhoton* and *James H. Stevenson,* for appellant.

When a person buys a ticket at a reduced rate, he will be held bound by the conditions printed thereon. 4 Ell., Railroads, § 1593. One who voluntarily suffers an expulsion from a railway coach in order to lay a foundation for a damage suit can-

not recover damages for his humiliation. 54 Ark. 354; 82 Ark. 128; 77 Ark. 20. The plaintiff was bound by his contract, whether he read it or not. 132 U. S. 146; 4 Ell., Railroads, § 1593.

*Callaway & Huie,* for appellee.

Appellee was not required to know the rules of the company. 8 Am. St. R. 859. The railway company should have honored his mileage. 65 Ark. 177; 88 Ark. 282.

HART, J., (after stating the facts.) We do not think the plaintiff is entitled to recover in this case. One of the conditions of the ticket was that it could not be used for passage between points in the State of Arkansas after the maximum rate of three cents per mile was charged. The change was made pursuant to the terms of an order of injunction issued by the United States Circuit Court, and a three cent rate for intrastate travel was put into effect on the 18th day of October, 1908; and plaintiff knew of this fact before he boarded the defendant's train for passage on the day he was ejected. The terms of the contract were set forth in the mileage book, and were binding. Plaintiff took the train, well knowing that, by the express terms of his contract, he was liable to expulsion. He should not have taken passage knowing that his mileage book was not good for intrastate travel, and, having done so, should not have been permitted to recover.

Plaintiff relies upon the cases of *Hot Springs Railroad Company* v. *Deloney,* 65 Ark. 177 and *St. Louis, Iron Mountain & Southern Railway Company* v. *Baty,* 88 Ark. 282. The difference between these cases and the case at bar is that in the former the tickets were apparently good on their face, and the passengers had no notice of their defects, which was the result of the negligence of the ticket agent, while in the case under consideration the ticket or mileage book was not good for passage between points in this State, and plaintiff had knowledge of that fact when he entered the train from which he was expelled, and his expulsion was not accomplished by any physical force, and was unattended by any circumstances of insult. For illustrations of the rule that the knowledge of the passenger in such cases precludes a recovery for damages for expulsion from the train, we cite the following cases: *Gulf, C. & S. F. Ry. Co.* v.

*Copeland,* 42 S. W. (Tex. Civ. App.) 239; *Texas & Pac. Ry. Co.* v. *Wynn,* 97 S. W. (Tex.) 506; *Gulf, C. & S. F. Ry. Co.* v. *Daniels,* 29 S. W. (Tex. Civ. App.) 426; *Pittsburgh, C. C. & St. L. Ry. Co.* v. *Daniels,* 90 Ill. App. 154; *Western Maryland Railroad* v. *Stocksdale,* 83 Md. 245; *Russell* v. *Missouri, K. & T. Ry. Co.,* 12 Tex. Civ. App. 627.

It follows therefore that the court erred in not instructing the jury to find for the defendant as requested by it.