CHARLES FREDERICK V. THE MARQUETTE, HOUGHTON &
ONTONAGON RAILROAD CO.

*Passenger's Ticket as Evidence of His Rights.*

As between conductor and passenger, the latter's ticket is con-
clusive evidence of the extent of his right to travel, and he
must produce it when called on as the evidence of his right
to the seat he claims.

In determining the duties of conductors and the rights of pas-
sengers, the methods generally adopted by common carriers
to carry on business successfully, must be regarded.

Whether an action for damages for breach of contract might not
lie for ejecting a passenger who had paid for a ticket to a
certain point but had been given one for a shorter distance
—*Q.* But it must not be based on the conductor's refusal to
respect a correct ticket, if he really respects the ticket pre-
sented, for the distance it covers.

Error to Marquette. Submitted June 15. Decided Oct. 16.

TRESPASS ON THE CASE for damages.    The facts are in
the opinion.

*Ball & Owen* for plaintiff in error cited *Quimby v. Van-
derbilt,* 17 N. Y., 306; *Van Buskirk v. Roberts,* 31 N.
Y., 661; *Pullman Palace Car Co. v. Reed,* 75 Ill., 125;
*C., B. & Q. R. R. Co v. Griffin,* 68 Ill., 499.

*W. P. Healy* and *G. V. N. Lothrop* for defendant in
error cited *Downs v. N. Y. & N. H. R. R.,* 36 Conn.,
287; *Hibbard v. N. Y. & E. R. R.,* 15 N. Y., 470;
*Townsend v. N. Y. C. & H. R. R. R.,* 56 N. Y. 298.

MARSTON, J.    This is an action on the case brought
to recover damages for being unlawfully ejected and put off
a train of cars by the conductor of the train.    The evi-
dence on the part of the plaintiff tended to show that on
the evening of January 29th, 1876, he went to the regular
ticket office of the defendant at Ishpeming and asked for
a ticket to Marquette, presenting to the agent in charge of
the office one dollar from which to make payment there-

for; that the agent received the money, handed plaintiff a ticket and some change, retaining sixty-five cents for the ticket, the regular fare to Marquette; that plaintiff did not attempt to read what was on his ticket, nor did he count the change received back until next morning or notice it until then; that he went on board the train bound for Marquette, and after the train left the station the conductor took up the ticket, giving him no check to indicate his destination, but at the time telling him his ticket was only for Morgan; that when the train reached Morgan the conductor told the plaintiff he must get off there or pay more fare; that if he wanted to go to Marquette he must pay thirty-five cents more.     Plaintiff insisted he had paid his fare and purchased his ticket to Marquette and refused to pay the additional fare, whereupon he was ejected from the train, etc.     On the part of the defendant evidence was given tending to show that the ticket purchased and presented to the conductor was in fact a ticket for Morgan and not for Marquette.     Under the pleadings and charge of the court other evidence in the case and questions sought to be raised need not be referred to, and as the real gist of the action was for the expulsion from the cars by the conductor, the above statement is deemed sufficient to a proper understanding of the case.

An erroneous impression seems to prevail with many that where the conductor of a passenger train ejects therefrom a passenger who has paid his fare to a point beyond, but has lost or mislaid his ticket, or whose ticket does not entitle him to proceed farther, or upon that train, that the company is liable in an action at law for all damages which the party may in any way have sustained in consequence of the delay, mortification, injury to his health or otherwise, and that the passenger is under no obligation to prevent or lessen the damages by payment of the necessary additional fare to entitle him to complete his journey without interruption.     Although such damages were claimed in this case, under our present view it will be unnecessary to discuss this question any farther at present.

What then is the duty of the conductor in a case like the present? and what are the passenger's rights? In considering these questions we cannot shut our eyes to the manner and method which railroad companies and common carriers generally have adopted in order to successfully carry on their business. The view to be taken of these questions must be a practical one, even although it may work, perhaps injustice in some special and particular cases, resulting however in great part if not wholly from other causes. In *Day v. Owen*, 5 Mich., 521, Mr. Justice Manning in speaking of the rules and regulations of common carriers, said "all rules and regulations must be reasonable, and to be so, they should have for their object the accommodation of the passengers. Under this head we include everything calculated to render the transportation most comfortable and least annoying to passengers generally; not to one, or two, or any given number carried at a particular time, but to a large majority of the passengers ordinarily carried. Such rules and regulations should also be of a permanent nature, and not be made for a particular occasion or emergency."

It is within the common knowledge or experience of all travelers that the uniform and perhaps the universal practice is for railroad companies to issue tickets to passengers with the places designated thereon from whence and to which the passenger is to be carried; that these tickets are presented to the conductor or person in charge of the train and that he accepts unhesitatingly of such tickets as evidence of the contract entered into between the passenger and his principal. It is equally well known that the conductor has but seldom if ever any other means of ascertaining, within time to be of any avail, the terms of the contract, unless he relies upon the statement of the passenger, contradicted as it would be by the ticket produced, and that even in a very large majority of cases, owing to the amount of business done, the agent in charge of the office, and who sold the ticket, could give but very little if any information upon the subject. That this system of issuing tickets, in a very large majority of cases works well, causing but very

little, if any annoyance to passengers generally, must be admitted.   There of course will be cases, where a passenger who has lost his ticket, or where through mistake the wrong ticket has been delivered to him, will be obliged to pay his fare a second time in order to pursue his journey without delay, and if unable to do this, as will sometimes be the case, very great delay and injury may result therefrom.   Such delay and injury would not be the natural esult of the loss of a ticket or breach of the contract, but would be, at least in part, in consequence of the pecuniary circumstances of the party.   Such cases are exceptional, and however unfortunate the party may be who is so situate, yet we must remember that no human rule has ever yet been devised that would not at times injuriously affect those it was designed to accommodate.   This method of purchasing tickets is also of decided advantage to the public in other respects; it enables them to purchase tickets at times and places deemed suitable, and to avoid thereby the crowds and delays they would otherwise be subject to.   Were no tickets issued and each passenger compelled to pay his fare upon the cars, inconvenience and delay would result therefrom, or the officers in charge of the train to collect fares would be increased in numbers to an unreasonable extent, while at fairs and places of public amusement where tickets are issued and sold entitling the purchaser to admission and a seat, we can see and appreciate the confusion which would exist if no tickets were sold, or if the party presenting the ticket were not upon such occasions to be bound by its terms.

How, then, is the conductor to ascertain the contract entered into between the passenger and the railroad company where a ticket is purchased and presented to him? Practically there are but two ways,—one, the evidence afforded by the ticket; the other, the statement of the passenger contradicted by the ticket.   Which should govern?   In judicial investigations we appreciate the necessity of an obligation of some kind and the benefit of a cross-examination. At common law parties interested were not competent wit-

37 MICH.—44.

nesses, and even under our statute the witness is not permitted, in certain cases, to testify as to facts which, if true, were equally within the knowledge of the opposite party, and he cannot be procured.     Yet here would be an investigation as to the terms of a contract, where no such safeguards could be thrown around it, and where the conductor, at his peril, would have to accept of the mere statement of the interested party.     I seriously doubt the practical workings of such a method, except for the purpose of encouraging and developing fraud and falsehood, and I doubt if any system could be devised that would so much tend to the disturbance and annoyance of the traveling public generally. There is but one rule which can safely be tolerated with any decent regard to the rights of railroad companies and passengers generally.     As between the conductor and passenger, and the right of the latter to travel, the ticket produced must be conclusive evidence, and he must produce it when called upon, as the evidence of his right to the seat he claims.     Where a passenger has purchased a ticket and the conductor does not carry him according to its terms, or, if the company through the mistake of its agent, has given him the wrong ticket, so that he has been compelled to relinquish his seat, or pay his fare a second time in order to retain it, he would have a remedy against the company for a breach of the contract, but he would have to adopt a declaration differing essentially from the one resorted to in this case.

We have not thus far referred to any authorities to sustain the views herein taken.     If any are needed the following, we think, will be found amply sufficient, and we do not consider it necessary to analyze or review them.·    *Townsend v. N. Y. C. & H. R. R. R. Co.,* 56 N. Y., 298; *Hibbard v. N. Y. & E. R. R.,* 15 N. Y., 470; *Bennett v. N. Y. C. & H. R. R.,* 5 Hun, 600; *Downs v. N. Y. & N. H. R. R.,* 36 Conn., 287; *C., B. & Q. R. R. v. Griffin,* 68 Ill., 499; *Pullman P. C. Co. v. Reed,* 75 Ill., 125; *Shelton v. Lake Shore etc. Ry. Co.,* 29 Ohio St.

I am of opinion that the judgment should be affirmed, with costs.

COOLEY, C. J., concurred.

GRAVES, J.   By mistake the company's ticket agent issued and plaintiff accepted a ticket covering a shorter distance than that bargained and paid for; and having ridden under it the distance which it authorized and refusing to repay for the space beyond, the plaintiff was removed from the cars.

This removal may or may not have constituted a cause of action, but it is not the cause of action charged.   The declaration sets up that plaintiff's ticket was a proper one for the whole distance and that he was removed in violation of the right which the ticket made known to the conductor.

There was no proof of the case alleged, and I agree therefore in affirming the judgment.

CAMPBELL, J.   The plaintiff's cause of action in this case was for the failure of the company to carry him to a destination to which he had paid the passage money, and the immediate occasion for his removal from the cars was that he was given a wrong ticket, and was not furnished with such a one as the conductor was instructed to recognize as entitling him to the complete carriage.   His declaration should have been framed on this theory.   Had it been so framed I am not prepared to say that he may not have had a right of action for more than the difference in the passage money.

But as he counted on a failure of the conductor to respect a correct ticket, and it appears that the conductor gave him all the rights which the ticket produced called for, there was no cause of action made out under the declaration, and the rule of damages need not be considered.   I concur in affirming the judgment.