## YORTON vs. MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY.

*January 14 — February 7, 1882.*

RAILROADS.    *Stop-over tickets: Rights of carrier and passenger in respect thereto.*

1. A regulation by a railway company, by which one who has paid his fare between two points on the road, but desires to stop over at an intermediate point, is required to procure a stop-over ticket from the conductor, and present it to the conductor of the train on which he seeks to complete his journey, as evidence of his right to do so without further payment, is a reasonable regulation.

2. If the passenger, in such a case, asks the proper conductor for a stop-over ticket, and, through the conductor's fault, receives instead thereof only a trip check, the second conductor may still demand of him the additional fare, and, upon his refusal to pay it, may eject him from the train at some usual stopping place, using no unnecessary force; and such ejection will be no ground of recovery against the company, though such company will be liable to the passenger for the fault of the first conductor.

APPEAL from the County Court of *Milwaukee* County. Action for an alleged illegal ejection of the plaintiff from one of defendant's trains, upon which he was riding as a passenger. The grounds of the action and of the defense, and the errors alleged by the appellant, will sufficiently appear from the opinion. The plaintiff had a verdict for $1,000 damages; a new trial was refused; and defendant appealed from a judgment on the verdict.

For the appellant there was a brief by *Cottrill, Cary & Hanson,* and oral argument by *Mr. Cottrill.*

For the respondent there was a brief by *E. P. Smith* and *Nath. Pereles & Sons,* and oral argument by *Mr. Smith.* To the point that plaintiff was entitled to his passage to Oshkosh upon the train from which he was ejected, that his ejection was therefore unlawful, and that the company could not justify it by his want of a stop-over ticket, which was itself a result of the fault of their own agent, they cited *Burnham v. Railway Co.,* 63 Me., 298; *Townsend v. N. Y. C. & H. R. Railroad Co.,* 4 Hun, 217; *English v. Del. & H. Canal Co.,* 66 N. Y., 454; *Hamilton v. Third Ave. Railroad Co.,* 53 id., 25; *English v. Canal Co.,* 4 Hun, 683; *Toledo, W. & W. Railway Co. v. McDonough,* 53 Ind., 289; *Palmer v. Railroad,* 3 Rich., N. S., 580; *Graham v. Pacific Railroad Co.,* 66 Mo., 536; *Du Laurans v. Railroad Co.,* 15 Minn., 49; *Pitts., C. & C. Railroad Co. v. Hennigh,* 39 Ind., 509; *Frederick v. Railroad Co.,* 5 Cent. L. J., 476; *Bennett v. Railroad Co.,* 5 Hun, 599; *Downs v. Railroad Co.,* 36 Conn., 287; *Chicago, B. & Q. Railroad Co. v. Griffin,* 68 Ill., 499; *Pullman Palace Car Co. v. Reed,* 75 id., 125; *Shelton v. Railway Co.,* 29 Ohio St., 214; *McClure v. Railroad Co.,* 34 Md., 532; 27 Md., 277; Hutchinson on Carriers, secs. 573–75. To the point that plaintiff was not guilty of negligence affecting his rights in failing to read the ticket given him by the first conductor as a stop-over ticket, they cited *Palmer v. Railroad,* 3 Rich., 580; *Brown v. C., M. & St. P. Railway Co.* (here-

inafter reported); *Blossom v. Dodd*, 43 N. Y., 265; *Rawson v. Railroad Co.*, 48 id., 216, 217.

COLE, C. J.   It is an admitted fact that the plaintiff purchased a ticket at Marion for transportation over the defendant's road to Oshkosh, and took the train at the former place. For the purposes of this appeal, it is assumed that he delivered that ticket to the first conductor, Sherman, and asked for a stop-over ticket at Clintonville, an intermediate station, and that through the fault or mistake of the conductor he received a trip or train check instead of a stop-over ticket, which he asked for, and which the conductor undertook to give him.   It may further be assumed that he was not bound to read the check, and was guilty of no negligence in not reading it (though it would certainly have notified him that it only entitled him to ride on that train), and then calling the attention of the conductor to the mistake he had made.

These facts being assumed in the plaintiff's favor, we may further assume that his account of the circumstances attending his ejection from the train is, in the main, correct.   He says, in substance, that the next morning, when he took another train at Clintonville, under charge of another conductor, when asked for his ticket, he presented the check which Sherman had given him.   The second conductor properly told him that he could not ride on his train on that check; that it was only good with Sherman; and that he must either pay his fare to Oshkosh or leave the train.   This was said to the plaintiff while upon the cars at Clintonville, before the train started, and while he had ample opportunity to leave the train.   Indeed, the plaintiff testified that this same conversation was repeated before the train started from Clintonville, the conductor all the time telling him that the check gave him no right to ride on his train, and that he must either pay his fare or leave the train, while he asserted his right to go on that train, because he had once paid his fare.   Thus the mat-

ter stood when the train left Clintonville, the plaintiff remaining on the cars; and, as the train approached the next station, upon his fare being again demanded by the conductor, and refused, he was forcibly ejected from the train at the Bear Creek station, more than six miles from Clintonville. He was left at the station at about 3:30 o'clock in the morning on the 28th of October; the depot was closed, and he was unable to obtain shelter; he was exposed to cold, damp winds, contracted a violent cold, and became sick. This exposure and sickness resulting from being ejected from the train at the time and in the manner he was, constituted his principal claim for damages.

On the question of damages the learned county court charged the jury that, if they found the facts relating to the purchase and surrender of the ticket by the plaintiff, and his expulsion from the train, to be as detailed by the plaintiff's witness, then the plaintiff was entitled to recover full compensatory damages for the defendant's acts; that in assessing such damages the plaintiff was entitled to recover not only for the mere pecuniary loss and expense, loss of time, and inability to attend to his business, directly resulting from said acts, but also for bodily suffering, mental pain and disquietude, and the sense of injury and humiliation felt from the indignity inflicted in being so unjustly expelled from the cars; that this would include all bodily ailments, lameness, suffering and fatigue resulting from his being so ejected, or from the exposure to the weather in the night; that in considering the question of damages the jury might take into account the manner and time of the plaintiff being ejected from the cars, the situation and surroundings of the place where he was so ejected, and all circumstances which had been shown going to aggravate the injury, and assess full damages therefor.

This is the substance of the charge on the question of damages, and it manifestly goes upon the hypothesis that the plaintiff had a right to ride upon the train on the facts detailed

by him, and that his expulsion therefrom was unlawful. In this view we think the learned county court erred. The learned counsel for the defendant insists that no claim for any damages whatever was shown or established. He says the ticket first bought was for a continuous passage from Marion to Oshkosh, and that, as the plaintiff voluntarily left the train at Clintonville, the company was under no obligation to give him a stop-over check or transport him on another train. But the conductor, Sherman, testified that he was accustomed to give these stop-over checks when requested by passengers, and he was doubtless authorized to give them. The reason why he did not give one to the plaintiff when he took up his through ticket, he says, was because the plaintiff did not ask for one, being then uncertain whether he would stop at Clintonville or not; consequently he gave him a trip or train check only. This was Sherman's understanding in the matter, and a stop-over check was not given because it was not asked for, and not for the reason that it was unusual to give them. Without attempting to settle the conflict in the testimony upon this point, we assume that a stop-over check was asked for by the plaintiff when he surrendered his ticket, and that it was the conductor's fault that he did not receive one. Then the question arises, Was the plaintiff entitled to ride on a subsequent train, not having a proper stop-over check, or was the second conductor justified under the circumstances in putting him off the train when he refused to pay his fare? The court below held that a rule or regulation of a railway company requiring passengers who ride upon its trains to procure from the conductor, or person in charge of the train, a stop-over check if they desire to stop before concluding their journey or before reaching the point to which they have purchased a ticket, is a reasonable rule and binding on passengers riding on its trains. The correctness of this proposition is hardly debatable. Now it is practically conceded that the defendant company had such a rule or regulation for the guidance of its conduct-

ors.   If it had, it would necessarily follow that it was the clear duty of the second conductor to obey and enforce the rule or regulation.   Consequently he was perfectly justifiable in ejecting the plaintiff from his train when plaintiff had no proper voucher, produced no sufficient evidence of his right to ride thereon and refused to pay fare, and he himself was ignorant of the transaction between the plaintiff and the conductor Sherman.   It seems to us there was no other course for him to pursue under the rules of the company, for he was certainly not bound to take the plaintiff's word that he had paid his fare, and that Sherman had made a mistake in not giving him a stop-over check.

It is apparent that the right of the plaintiff to ride on the train without a proper voucher, and the right of the second conductor to eject him for want of said voucher, were inconsistent rights, which could not co-exist at the same time. Therefore, under the rule of the company, the second conductor was clearly authorized and required to put the plaintiff off his train when he refused to pay fare, using no more violence than was necessary to accomplish his object; for the plaintiff had no right to remain on the train without a proper voucher, or producing some evidence showing he was entitled to carriage on that train without paying additional fare.   Suppose the plaintiff had received from Sherman, when he surrendered his ticket, the proper stop-over check, but had lost it before he took the subsequent train: could he have insisted in that case upon riding on a train with another conductor without paying fare?   It seems to us he could not.   It would be the duty of the second conductor, in the case supposed, on his refusing to pay fare, to eject him from the train at some usual stopping place, using no unnecessary force.   So, here, the plaintiff was not entitled, upon anything he showed the second conductor, to ride on his train.   That conductor, therefore, had the lawful right to eject him from it; nay, he was bound to do so, in obedience to the reasonable rules of the company

which required a passenger to obtain from his conductor a stop-over check when he desired to stop before reaching the place to which he had purchased a ticket; and the mistake or fault of the conductor in not giving him, on request, such a check, would not give him a lawful right to ride on the second train, though he might recover damages against the company for the wrongful act of the first conductor. *Townsend v. N. Y. C. & H. R. Railroad*, 56 N. Y., 295; *Chicago, etc., Railroad Co. v. Griffin*, 68 Ill., 499.

The case of *Townsend v. Railroad, supra,* is quite in point on the question we are considering. There the plaintiff purchased a ticket at the Sing Sing station for Rhinebeck, but took a train going no further north than Poughkeepsie. The conductor on the train called for tickets, and the plaintiff handed him his ticket, receiving back no check or other evidence showing a right to a passage on any other train of the defendant; nor did the plaintiff ask for a return of his ticket, or for any such evidence. He left the train at Poughkeepsie, where it stopped, and waited until another train arrived from New York going to Albany, which he took. After the train started, "the conductor called upon him for his ticket, in reply to which the plaintiff told him that he had purchased a ticket from Sing Sing to Rhinebeck, which the conductor of the other train had not given back to him. Some of the passengers told the conductor that the plaintiff had such a ticket. The conductor told the plaintiff that it was his duty, in case he had no ticket, to collect the fare, and that the other conductor would make it right with him. The plaintiff refused to pay fare, and the conductor told him he must leave the train. This the plaintiff refused to do, insisting upon his right to a passage to Rhinebeck upon the ticket which the conductor of the other train had taken. Upon the arrival of the train at Staatsburg, a regular station, the plaintiff, still refusing to pay fare or to leave the train upon request, was taken hold of, and such force used as was necessary to overcome his

JANUARY TERM, 1882. ·241

Yorton vs. The Milwaukee, Lake Shore & Western R'y Co.

resistance, and ejected from the car." The court held that he was lawfully put off the train, notwithstanding the wrongful act of the previous conductor in taking his ticket. The case is well considered, and the opinion of Judge GROVER is very instructive. Substantially the same doctrine as to the rights and duties of passengers and carriers is laid down in *Shelton v. Railway Co.*, 29 Ohio St., 214; *Downs v. Railroad Co.*, 36 Conn., 287; and *McClure v. Railroad Co.*, 34 Md., 532. The cases of *Toledo, W. & W. Railway Co. v. McDonough*, 53 Ind., 289; *Burnham v. Railway Co.*, 63 Me., 298; *Palmer v. Railroad*, 3 Rich. (S. C.), 580; *Hamilton v. Railroad Co.*, 53 N. Y., 25; and *English v. Canal Co.*, 66 N. Y., 454, are clearly distinguishable from the case before us.

Putting the plaintiff off the train, then, at Bear Creek station was not an unlawful act. It was what the second conductor was bound to do in the discharge of his duty to the company. It is true, as a consequence of being ejected at that place, at that time, in the night, he contracted a violent cold and became sick. But this exposure he really brought upon himself by his own conduct. Why, then, should he complain about it? He was distinctly told at Clintonville that he could not ride on the train unless he paid his fare. He had an ample opportunity to leave the train at that place. But he persistently refused either to leave the train or pay his fare, preferring to take his chances upon being put off at some subsequent station. He was told by the conductor that he would be put off at the next station unless he paid his fare. He might not have been familiar with the surroundings at Bear Creek station, but he certainly knew he would be put off, probably in the night-time. The weather was cold, and he was liable to be exposed on leaving the train. All these things he knew or should have known, but he chose to remain on the train and abide the consequences. Under the circumstances he ought not to recover damages for any exposure or sickness which he brought upon himself by his own foolish and per-

verse conduct. For, as we have said, he was not entitled to a passage on that train, and was rightfully removed therefrom.

We are not called upon, on this appeal, to determine definitely what damages the plaintiff is entitled to recover for the wrongful act of the first conductor. It will be in time to consider that question when it shall properly arise. We now only intend to decide that the charge of the county court before referred to, which directed the jury, in the event they found in favor of the plaintiff, that they should assess damages for injuries arising from sickness, exposure or bodily suffering which resulted from his being justly expelled from the train at Bear Creek station, was erroneous. For the reasons given, the plaintiff was not entitled to recover any damages on that ground. The other exceptions taken to instructions given, or refusals to give instructions, need not be considered.

*By the Court.*— The judgment of the county court is reversed, and a new trial ordered.