AARON HUFFORD v. GRAND RAPIDS & INDIANA RY. Co.

*Railroad passenger's ticket—Medical testimony.*

1. A railway passenger ticket is conclusive evidence, as between the passenger and the conductor, of the extent of the passenger's right to travel. And though if the ticket is apparently good the passenger has a right to rely on it and refuse to leave the train if the conductor requires him to do so as an alternative to paying his fare, the safer way is to pay the fare and afterwards hold the company responsible for the refunding of the money so paid and for compensation for any trouble he may be put to in getting it.

2. Medical testimony as to the possible effect on the plaintiff's health of provoking language or vexatious circumstances is out of place in an action for a tort to which these are merely incidental.

Error to Kent.   (Montgomery, J.)   Feb. 5.—March 6.

CASE.   Defendant brings error.   Reversed.

*N. A. Earle* and *M. J. Smiley* for appellant.

*E. S. Eggleston* for appellee.

COOLEY, C. J.   The plaintiff sues for being wrongfully threatened with expulsion from the cars of defendant, and compelled to pay fare a second time after he had bought a ticket which the conductor refused to take.

It appears that on September 19, 1882, the plaintiff and one Goodyear were at Manton, on the road of defendant, and about to proceed to the north.   They had then been together some days.   At Manton they bought tickets for Traverse City from the agent of defendant.   Plaintiff noticed that the ticket given to him was not like that given to Goodyear, and he called the agent's attention to the fact, and inquired if it was good, and was told it was.   In this the agent was mistaken.   The ticket was one part of an excursion ticket from Sturgis to Traverse City, and had been canceled from Sturgis to Grand Rapids.   The evidence is conflicting as to whether it had not also been canceled from Grand Rapids to

Walton, a station north of Manton.  When the ticket was presented to the conductor he told plaintiff it was not good separated from the other part.  He also claimed that it had been used by another person to Walton, and he told the plaintiff he must pay his fare to Walton or he should put him off the cars.    The plaintiff at first refused, and was advised by Goodyear to persist in his refusal, but when the conductor took hold of the bell-rope to stop the train, and, as plaintiff says, put his hand on plaintiff's shoulder, he consented to pay the fare, and did so, taking the conductor's receipt therefor.  The fare paid was twenty-five cents.  The plaintiff then proceeded on his journey.

To show that he was entitled to something more than merely nominal damages the plaintiff gave evidence that he was not well at the time of the occurrence; that he had a chronic diarrhea, and he thought the trouble was greater afterwards than before.  It does not seem, however, to have interfered with his business, which was that of a commercial traveler, nor had it kept him from visiting the houses of ill-fame at Cadillac a day or two before.  A physician was put upon the stand as an expert, and was asked whether, if a man afflicted with chronic diarrhea, and riding upon a public railroad car, should be taken hold of by the conductor, and under a threat to eject him from the car, the person excited under the influence of it, it would have any effect upon his health.  The reply was, that it would be likely to cause relaxation of the bowels temporarily.

In submitting the case to the jury the judge instructed them that if they should find from the evidence that the plaintiff purchased the ticket in question in good faith, and had paid for the same, and only refused to leave the train under an honest belief of having paid his fare, and that the ticket was good from Manton to Traverse City, and that this belief was induced by the assurances of the agent of the company of whom he purchased the ticket, and if there was nothing upon the face of the ticket which would apprise him of any infirmity in it, then any attempt of the conductor to remove the plaintiff from the car, by the actual taking

hold of his person, or laying his hands upon him for that purpose, was an assault and battery, for which the plaintiff had a right to recover any and all damages naturally and legitimately resulting therefrom. Under this instruction the plaintiff had a verdict for $366.61.

In *Frederick v. Marquette &c. R. R. Co.* 37 Mich. 342: s. c. 26 Am. Rep. 531, it was decided that, as between the conductor and the passenger, the ticket must be the conclusive evidence of the extent of the passenger's right to travel. No other rule can protect the conductor in the performance of his duties, or enable him to determine what he may or may not lawfully do in managing the train and collecting the fares. If, when a passenger makes an assertion that he has paid fare through, he can produce no evidence of it, the conductor must at his peril concede what the passenger claims, or take all the responsibilities of a trespasser if he refuses, it is easy to see that his position is one in which any lawless person, with sufficient impudence and recklessness, may have him at disadvantage, and where he can never be certain, if he performs his apparent duty to his employer, that he may not be subjected to severe pecuniary responsibility. Such a state of things is not desirable, either for railroad companies or for the public. The public is interested in having the rules whereby conductors are to govern their action certain and definite, so that they may be enforced without confusion and without stoppage of trains; and if the enforcement causes temporary inconvenience to a passenger, who by accident or mistake is without the proper evidence of his right to a passage, though he has paid for it, it is better that he submit to the temporary inconvenience, than that the business of the road be interrupted to the general annoyance of all who are upon the train. The conductor's duty, when the passenger is without the evidence of having paid his fare, is plain and imperative, and it can serve no good purpose and settle no rights to have a controversy with him. The passenger gains nothing by being put off the car, and loses nothing by paying what is demanded and staying on.

The plaintiff, therefore, in this case, if it was found that the ticket he held was not good by reason of former use and cancelment, should have paid his fare when it was demanded, and looked afterwards to the railroad company for the refunding of the money, and for compensation for any trouble he might be put to in obtaining it.   And it would have been very prudent and proper for him to adopt this course, even though there was nothing on the face of the ticket to apprise him of the invalidity.   If the conductor, who was manager of the train, informed him that for any reason the ticket was one he could not receive, a contest with him over it must generally be very profitless, and therefore unadvisable.   But we are all of opinion that if the plaintiff's ticket was apparently good, he had a right to refuse to leave the car.

The following cases support *Frederick v. Marquette &c. R. R. Co.*, and some of them in their facts closely resemble the one before us : *Townsend v. N. Y. C. & H. R. R. Co.* 56 N. Y. 295 : s. c. 15 Am. Rep. 419 ; *Chicago &c. R. R. Co. v. Griffin* 68 Ill. 499 ; *McClure v. Philadelphia &c. R. R. Co.* 34 Md. 532 : s. c. 6 Am. Rep. 345 ; *Shelton v. Lake Shore &c. R. R. Co.* 29 Ohio St. 214 ; *Downs v. N. Y. & N. H. R. R. Co.* 36 Conn. 287 : s. c. 4 Am. Rep. 77 ; *Petrie v. Pennsylvania R. R. Co.* 42 N. J. Law 449 ; *Yorton v. Milwaukee &c. R. R. Co.* 54 Wis. 234 : s. c. 41 Am. Rep. 23, and 6 Am. & Eng. R. R. Cas. 322. . Whether the ticket the plaintiff held was fair upon its face was a disputed question in the case, and must depend for its solution upon the view taken by the jury of the credibility of the witnesses who testified respecting it.

The medical evidence which was given in the case, respecting the effect of the alleged assault upon the plaintiff's health, seems to call for some comment.  As the assault was a battery only in a technical sense, and there was no pretense of injury except such as might come from mere words— from the mere expression on the part of the conductor, of a determination to put the plaintiff off the car unless he paid his fare—the proposition that it was proper to call expert

witnesses to show the possibility of injurious consequences from such words, to the plaintiff's health, is suggestive of possibilities in the trial of causes which the trial judge may well contemplate with some solicitude. If expert evidence of the sort were admissible in this case, it is difficult to conceive of a case of assault and battery or of any other case in which vexing or provoking words are made use of, where the expert witness may not become an important factor in determining the result. But the field for his operations could by no means be restricted to cases in which disturbing words had been made use of; nearly every case of tort is accompanied by some circumstance which is calculated to annoy and vex the party entitled to sue for it; and if the possible effects upon the mind, and through the mind upon the health, are to be the subject of expert investigation and testimony in a case like this, they must be so at the discretion of the parties in all cases, and the medical witness may become as much an incident to the session of a trial court as the jury itself. Should this ever come to be the case, the parties, in putting their questions to the expert witnesses, should at least be required to take into account—when considering possible consequences—such contemporaneous or nearly contemporaneous facts as may also conduce to the disturbance of health; such, for example, as some which appeared in this case and have been mentioned above.

The judge, in his instructions, evidently attached importance to this expert testimony, and it no doubt conduced to swell the damages awarded.

The case should go back for a new trial.

SHERWOOD and CAMPBELL, JJ. concurred. CHAMPLIN, J. did not sit in this case.