## McGRAW v. RAILROAD CO.

(Filed May 3, 1904).

CARRIERS—*Passengers—Damages.*

> A person who gets on a blind baggage car, though having a ticket, but not having told the conductor that he had it, and the conductor not having seen it, is not entitled to recover as a passenger for injuries received by being pulled off the train by the conductor.

CLARK, C. J., dissenting.

ACTION by Theodore McGraw and John S. White against the Southern Railway Company, heard by *Judge T. A. McNeill* and a jury, at March Term, 1904, of the Superior Court of MECKLENBURG County.

The plaintiff, together with one White, purchased a ticket from the defendant's agent at Charlotte entitling him to go to Huntersville. He and White, while the train was standing at the station, went across the street for the purpose of buying a melon. The train moving off they ran to catch it and got upon the platform of the first car they reached, being the "blind baggage" car. The train moved slowly until it reached the crossing of the Seaboard Air Line track, where it was required by law to stop. The conductor, finding the plaintiff and White on the platform, pulled them off.

The plaintiff alleges that he was a pasenger on the defendant's train, and that the conductor violently and wantonly assaulted him, whereby he was greatly injured. He sues to recover damages for his injuries. White also brought suit and the cases were consolidated.

The plaintiff having testified in regard to the purchase of the ticket and boarding the train, said: "After we crossed the crossing, Tom Rowland (the conductor) came through. I was on the side of the platform next to the door, and

White on the right side.  When he came up, he said: 'Fall off.'  I said 'I have got a ticket,' and he said 'you have like hell.'  I had a ticket in my hand.  He caught me by the left arm and jerked me off.  The train was moving."  He was corroborated by White.  The defendant introduced the conductor, who testified: "There is a State law requiring all trains to stop at the crossing.  My porter, as usual, went over to the engine to see if there were any tramps or people on the train who had no business.  On this occasion we stopped as usual.  The porter did not come back as usual and I thought there was something wrong.  I jumped on the ground and ran around the mail car.  I was on the back of the first-class car.  When I got to the front end of the mail car the train had begun to move, and I saw these two men up there.  About the time I got there the baggage-master stepped up on the other side.  I told the men to come down; they did not get down, and in order to get them on the ground before the train got up too much speed I reached up and pulled them down and let them light on the ground.  When I put the second one down, I caught on the back end of the same car.   *   *   *   I just caught hold of them and pulled them down.  They did not resist.  I had no conversation with them; did not see any ticket; did not suppose for a moment that they had any ticket or they would not be there, because it was not a place for passengers and they could not pass from that end of the car to the other.  There is no doorway between the mail car and the baggage car.  Passengers are not allowed to go through them at all."  He was corroborated by the porter.  It was also in evidence that the rule of the defendant company forbade passengers from riding on the platform.

The evidence in regard to the injury sustained by the plaintiff was contradictory.  His Honor directed the jury to answer the first issue "Yes."  The defendant excepted, and from a judgment for the plaintiff, the defendant appealed.

*Montgomery & Crowell* and *M. B. Stickley,* for the plaintiffs.

*George F. Bason* and *L. C. Caldwell,* for the defendant.

Connor, J.   There are a number of exceptions in the record to the instructions given by the Court and to the refusal to give special instructions, all of which are duly assigned as error.   We are of the opinion that the first exception should be sustained.   His Honor charged the jury, as a conclusion of law, that upon all the evidence the plaintiff was a passenger on the defendant's train, meaning of course that he was such for the purpose of maintaining this action. If he was correct in this, the jury must, as a conclusion of law, have answered the second issue "Yes"—thus eliminating the question whether the conductor used excessive force from consideration, except upon the character and amount of damages which should be awarded the plaintiff.

For the purpose of disposing of this first exception, we must assume that the conductor's account of the transaction is correct.   The instruction is necessarily based upon that assumption.   When the relation of passenger is established by entry upon defendant's premises for the purpose of purchasing a ticket or taking passage on the defendant's train, or entry into the cars for such purpose, the relative rights and duties of the passenger and carrier are fixed and well settled. There is a presumption that a person who enters a passenger car, nothing appearing in his conduct to the contrary, is or intends to become a passenger. *Railroad v. Brooks,* 57 Pa. St., 339, 98 Am. Dec., 229.   No such presumption arises when the entry is upon a baggage or mail car or upon any other portion of the train not assigned to passengers.   Elliott on Railroads, section 1578, says: "The presumption may of course be rebutted, and it will not ordinarily arise when the person occupies a position on the train which passengers have

McGraw v. Railroad Co.

no right to occupy, or goes upon a train on which passengers are not carried." The general rule is that a person can take passage on such trains only, and only in such places, as the rules of the company provide that passengers shall be carried, and one who does not conform to such rules is ordinarily to be regarded as an intruder or trespasser, and an intruder or trespasser cannot impose upon a railroad company the high duty which a carrier owes to its passengers." *Ibid.*, section 1581. It was the duty of the plaintiff, when found upon the platform of the baggage car, to promptly inform the conductor that he had a ticket, so that he could be given an opportunity to go into the car provided for passengers. He says that he did so. The conductor says that he did not do so, that he said nothing about having a ticket, and that he (conductor) saw no ticket. The truth of the matter should have been ascertained by the jury. If the plaintiff's version of the transaction is true, he is entitled to maintain his action. If the conductor's version is correct, he is not entitled as a passenger to recover. If the jury should find the conductor's version to be true, the plaintiff could recover damages for his ejection only by showing that the conductor used excessive force. *Railroad v. Herring,* 47 N. J. Law, 137; 54 Am. Rep., 123; Fetter on Carriers, 359. His right to recover punitive damages, if he shows himself entitled to compensatory damages, depends upon well-settled principles. *Holmes v. Railroad,* 94 N. C., 319. There must be a

New Trial.

Douglas, J., concurs in result only.

Clark, C. J., dissenting. The plaintiffs testified that they bought tickets, went across the street, still on the defendant's premises, and bought a muskmelon, and the train starting, they ran and got upon the platform of the baggage car, and

the assistant ticket agent of the defendant testified that the "tickets were all right." There is no evidence whatever to contradict this, and his Honor in his charge said: "I understand that counsel for both sides do not substantially disagree as to the facts of the first issue ('were plaintiff's passengers?'); they say that this is a deduction of law from the whole of the cause, so upon the evidence I advise you that you answer the first issue 'Yes.'" The counsel do not appear to have corrected or objected to this statement of the Judge at the time, as they should have done if they did not assent thereto, nor could they have shown any contradiction in the evidence as to the first issue. Their exception, entered after the trial, is clearly to the conclusion of law that those facts made the plaintiffs passengers, but in this there is no merit. The defendant's brief expressly says: "The Court was asked to instruct the jury that the plaintiffs were not passengers in contemplation of law"—thus concurring in the uncontradicted testimony as to the purchase of the tickets, but going on to argue that, being on the platform, the plaintiffs were not in law entitled to be treated as passengers, and therefore that the Judge instructed the jury wrongly upon the first issue. In both briefs filed by the defendant it is stated that the plaintiffs bought tickets, and the argument is that the Judge charged wrongly on that issue because the plaintiffs were not in the car.

Whether, in the absence of this direct and uncontradicted evidence that the plaintiffs bought tickets, and the ticket agent's evidence that the tickets were "all right," there would be a presumption that the plaintiffs were or were not passengers because of their being on the platform and not in the car, is a difficult question, and one which does not arise on the first issue upon this evidencee. The tickets were conclusive evidence that they were passengers. The Code, section 1963. How far the company should be excused for the

conductor's mistake in jumping to the conclusion that the plaintiffs were not passengers because they were on the platform and not in the car, is a matter to be urged, and doubtless was urged, to the jury on the third issue as to the measure of damages. But such mistaken inference by the conductor did not and could not destroy the effect of the uncontradicted evidence that the plaintiff had bought and paid for and had "all-right tickets," and were in fact on the train, in consequence, as passengers. There could therefore be no error in the view taken by the Judge as to the first issue. The plaintiffs both say they showed the conductor their tickets. He denies this but does not say they did not have tickets, nor does he testify that he asked for their tickets before he pulled them off the train while it was in motion, as he himself testifies. This was a violation of The Code, section 1962, and also of the rule of the company, No. 442, which was in evidence.

The following citations are from the very excellent brief filed by the plaintiffs' counsel and are exactly in point: Section 1963 of The Code says that "on the due payment of freight or fare, legally authorized therefor," railroads "shall take, transport and discharge such passengers." As between the conductor and passenger and the right of the latter to travel, the ticket produced must be conclusive evidence. *Frederick v. Railroad,* 37 Mich., 342, 26 Am. Rep., 531; *Hufford v. Railroad,* 53 Mich., 118. In *Creed v. Railroad,* 86 Pa. St., 139, 27 Am. Rep., 693, the plaintiff was travelling on a passenger train and on a car "not intended for use of passengers," and in a suit for damages it was held that the plaintiff was *prima facie* a passenger, though violating the rules of the company. *Brooks v. Railroad,* 57 Pa. St., 346; Thompson Carriers of Passengers (1880), 51. Irregularity in boarding the train does not sever the relationship of carrier and passenger. *Smith v. Railroad,*

18 N. Y. Supp., 759. To get upon the platform of a baggage car does not sever the relationship nor subject the passenger to the assaults of the conductor. Neither the carrier nor its employees can assume that a person on any car of a passenger train is a trespasser, merely because he is not in one of the cars provided for and usually occupied by a passenger. *Railroad v. Williams* (Texas), 40 S. W., 350. In that case the plaintiff was on the front platform of a baggage car and had not paid his fare. In *Martin v. So. Ry. Co.* (this same defendant), 51 S. C., 150, quoting and approving Williams' case, it is decided that "when one having a ticket, and with the intention to ride as a passenger, goes upon the train upon which his ticket entitles him to ride as such, even if he board the train at an unusual time and at an unusual place, he is entitled to the rights of a passenger, at least to the extent of not being mistreated by the employees of the company." In *Compton v. Railroad,* 34 N. J. Law, 134, the plaintiff had a ferry ticket, but instead of passing through the small gate, which was for passengers, he entered the ferry through the large gate intended for horses and vehicles, and in doing so violated the rules of the company. For this offense he was seized by the collar and jerked from the railing and dragged from the boat, *not while the boat was moving, however. Chief Justice Beasley,* in writing the opinion of the Court, says: "This agent of the railroad company had no right to expel this plaintiff from the boat without first informing him of the existence of the regulation of the company; nor had he any right to touch his person without first notifying him that unless he left the boat he would resort to such extreme means to put him off. The facts stand thus: A passenger is told by a subordinate officer of a railroad company to get off a boat; the passenger replied, 'I will not, I have a ticket'; the reply is, 'It makes no difference, you must get off

here,' and without more ado, he is seized by the collar and in the presence of many onlookers he is ignominiously expelled. I do not see but all reasonable men must unite in condemnation of such precipitate violence and indignity." In order to make Compton's case exactly like the case at bar the boat should have started off and then the plaintiff seized and thrown into the water. The learned *Chief Justice* further says that "these agents of incorporated companies must be taught that *personal violence must not be used except as a last resort and after explicit notification.*"