# MARY A. RHODES v. HONOLULU RAPID TRANSIT & LAND COMPANY.

## EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

### ARGUED NOVEMBER 15, 1904.     DECIDED DECEMBER 19, 1904.

### FREAR, C.J., HARTWELL AND HATCH, JJ.

STREET RAILWAY COMPANY—*action by wife.*

An action may be maintained by a wife in her own name against a street railway company, the husband having paid her fare in her presence on her behalf, and she having ratified his act.

ID.—*connecting line.*

The Hotel street line of the H. R. T. & L. Co. and the King street line of said company become connecting lines at the point where said Hotel street line enters King street on the north side of Nuuanu stream. A passenger on said King street line going toward Palama is entitled to a transfer to a King street car going toward Fort street.

ID.—*ejection of passengers—failure to produce ticket.*

A rule requiring a passenger to pay a fare or present a transfer in order to be entitled to ride upon a car of a street railway company is a reasonable rule. Where a passenger is entitled to a transfer, but has failed to obtain it through the fault of an agent or conductor of a street railway company, it is the duty of the passenger upon boarding a car upon a connecting line to pay the fare demanded by the conductor and seek redress against the company for a violation of the passenger's right in refusing the transfer.

ID.—*damages.*

including damages for humiliation, mental suffering, injured feelings, etc.

A passenger wrongfully refused a transfer to a connecting line by a street car company is entitled to compensatory damages,

OPINION OF THE COURT BY HATCH, J.

This was an action by Mary S. Rhodes, a married woman, against the Honolulu Rapid Transit & Land Company, defendant, for damages for injuries done to plaintiff by the servants of the defendant corporation in ejecting plaintiff from a car of the defendant. The case was tried before a jury on the 2d day of May, 1904. A verdict was found for the plaintiff with damages in the sum of $500. The bill of exceptions sets out thirty-one exceptions taken by the defendant during the trial and duly allowed. The defendant summarizes the exceptions under four heads as follows:

"1st. Can the action be maintained by the wife, contract having been made by the husband?

2nd. The right of the plaintiff to a transfer at Palama junction?

3rd. Whether the conductor on the King street line had the right to demand a fare and threaten to eject plaintiff if not paid?

4th. Whether the rule of damages applied by the court was correct?"

The evidence shows that the plaintiff and her husband had attended services at St. Clement's church on Wilder avenue on Sunday, the 31st day of May, 1903. The husband, desiring to go to the office where he was employed on Fort street, between King and Merchant, took a Hotel street car at the corner of Makiki and Wilder avenue, inviting his wife to accompany him, and paying her fare. On reaching the corner of Fort and Hotel streets the husband alighted from the car, having made the arrangement with his wife that she should remain on the car and proceed to Liliha street and should there transfer to a King street car and return to the corner of Fort and King streets, where he would meet her, and they would then proceed together on the King street car until they arrived at the station nearest their residence. The plaintiff resides on Young street, near Aloha lane. The Hotel street line and the King street line join at two places, namely, at Palama junction above referred to and at McCully street; the distance from Wilder avenue and Makiki

street to Aloha lane via McCully street being about one and one-half miles; via Palama junction, five miles. On arriving at Palama junction the plaintiff asked for a transfer to the King street line going south. The conductor refused it. When she stated to him that she had received one before at that point he told her that she had gotten it unlawfully. She still demanded the transfer. The conductor again refused to give it to her. At the corner of Liliha and King streets the plaintiff left the car, waited in the rain for a King street car returning toward town, boarded it at the front of the car hoping to find some one on board whom she could ask to pay her fare. She did not find anyone whom she could ask for the fare. The conductor demanded from her a fare. She explained that she had been refused a transfer by the conductor on the Hotel street car and that she did not have any money. The conductor assured her that she would be put off the car unless she paid her fare. He thereupon rang the bell, stopped the car, and the plaintiff under compulsion left the car and walked in the rain to the corner of Fort and King streets to meet her husband. The plaintiff claimed damages, according to the following particulars, and at the request of her counsel the jury was instructed that it might consider each of these claims:

"(1)   The tone and manner of the conductors respectively.

(2)   The publicity of the act of refusing the transfer and requiring and compelling plaintiff to leave the car.

(3    The inconvenience she suffered.

(4)   Her condition in respect to nervousness or embarrassment.

(5)   Any shock to her feelings or sensibilities.

(6)   Any immediate effects the acts alluded to may have had upon her.

(7)   The injured feelings of the plaintiff.

(8)   The indignity she endured.

(9)   Her mental sufferings.

(10   Her humiliation and wounded pride.

(11)   Any bodily harm or suffering naturally occasioned by the incident.

12)   To award plaintiff an amount that would reasonably

compensate her for all injury, directly or naturally flowing from her expulsion from defendant's car, including the immediately antecedent circumstances, bodily or mental pain and suffering and any physical disability which was the direct result of defendant's act."

No special damage seems to have resulted to the plaintiff other than the fact that she was nervous and did not sleep well for two or three days, that she was exposed to the rain and compelled to walk perhaps a quarter of a mile to the corner of Fort and King streets, being not in robust health. She was able, however, to call at the office of the superintendent of the defendant company the next day to make her complaint.

1st. Can the action be maintained by the wife, the contract having been made by the husband?

The defendant's contention here is based on the fact that the husband paid the fare of the wife. It does not necessarily follow that the contract for transportation must be taken to have been a contract with the husband alone. The plaintiff, by her action in boarding the car, showed that she was desirous to accept the transportation tendered by the defendant. Her conduct supplied every element of the implied contract for transportation necessary to be shown to establish a contract on her own part. The payment of the fare by the husband might be taken as a payment at the instance and request of the plaintiff, or as the honoring of an order by her for the amount. This would leave the plaintiff the maker of the contract for her own transportation. If, on the other hand, the transaction is considered as a contract made by the husband, it was made for the benefit of the wife, in her presence, and was ratified, adopted and acted upon by her at the time. This gave her the right to sue upon the contract in her own name. 7 Ency. Law, 2 Ed., 109.

2nd. The right of the plaintiff to a transfer at Palama junction.

The provisions of the statute, Act 69, Laws of 1898, under which defendant obtained its franchise, bearing on this subject are:

"Section 9.   1st.   Any person riding upon the cars of said railway shall be liable to pay for such transportation the following rates:   For a continuous ride anywhere between Diamond Head and Moanalua, or makai of a line drawn parallel to the sea coast, and one and a half miles distant therefrom, not to exceed five cents, provided that children under seventeen years of age in going to and from school, shall not be required to pay over half fares, for which purpose tickets shall be issued.

3rd.   Upon a continuous trip, persons riding upon the cars and transferring from one car to another, upon a connecting line within the limits above mentioned, shall be entitled to a transfer ticket without the payment of an extra fare upon the lines of this railway.

4th.   The said association and others shall make reasonable and just regulations with the consent and approval of the Governor regarding the maintenance and operation of said railway on and through said streets and roads; and the said association and others failing to make such rules and regulations, the superintendent of public works with the approval of the Governor may make them.   All rules and regulations may be changed from time to time as the public interests may demand at the discretion of the Governor.  * * * "

The defendant contends that the plaintiff was not entitled to a return trip on the one fare.   This is certainly correct.   The plaintiff, however, did not seek a return trip.   A return trip would mean retracing one's steps over the same route taken in going.   On the contrary the plaintiff desired to proceed over a connecting line to her destination which was not her point of departure, nor was it on the line taken by her when she first boarded the car.   The defendant further contends that admitting that at Palama junction the King street line becomes a connecting line with the Hotel street line, the plaintiff was entitled to a transfer only for a continuation of her journey in the same general direction as that taken by her upon the start. Did the legislature intend this?   The argument in support of this proposition is based chiefly upon the contention that if the right to a transfer were not so limited it would be in the power of a person to board a Hotel street car going north, transfer at Palama junction to a King street car going south, transfer

at McCully street to a Hotel street car going north, and thus.
continue making that circuit as long as he saw fit.   That, of
course, would be making an unlawful use of the defendant's.
road and would subject a person when detected to removal from
the car as a trespasser.   The only force in the argument is that
of the convenience of the defendant company.   With the law
construed in the way it contends for, it would be easier to pre-
vent such fraudulent use of its road.   On the other hand, many
cases may occur where it would be entirely reasonable that a
passenger should be entitled to a transfer in order to complete a
bona fide journey, though he might, to a certain extent, double
back on the course first taken by him.   This is what was decided
in *Dickey v. H. R. T. & L. Co.,* 15 Haw. 303.   An argument
based chiefly on the convenience of the defendant in the trans-
action of its business should not be given much weight if it.
involves a disregard of the reasonable demands of the traveling
public.   In *Dickey v. H. R. T. & L. Co.* the plaintiff boarded a
King street car going east and demanded a transfer at McCully
street to the Hotel street line which, if he remained on the car,.
would have carried him back in a north and westerly direction
to Palama junction, thence up Liliha street.   The decision in
that case was made to rest upon the construction given that
the plaintiff was traveling in one general direction only away
from his starting point.   The reasoning in the case, however,.
goes further than that.   It is pointed out that "there is no
requirement in the statute that each five cent ride shall be in
one general direction;" and it is further decided that the com-
pany cannot by a mere rule make a line a connecting one for
some purposes and a non-connecting one for other purposes.
We find no sound basis on which to rest a distinction in the
ruling to be made respecting transfers at the McCully street
junction or at the Palama junction.   If at McCully street a
transfer may be demanded which would take a person who
has come from town on a King street car first toward the moun-
tain, and then back toward the town on the Hotel street line,
an equal right should exist to a transfer such as the plaintiff

·demanded. The plaintiff was proceeding upon a continuous ride within the permitted district. No meaning can be given to the word "continuous" which would limit the right to a transfer to a car going in one direction only. Continuous means unbroken, and primarily is used in regard to time; but in the statute controlling this case "continuous" is to be con-·strued in connection with the words "within the limits above mentioned." This eliminates any idea of direction, and the only construction which can be given to the entire section is that the right is given to go in an unbroken journey between any two points within the given limits over any connecting line or lines by whatever route it may be necessary to take to reach the point of destination. The passenger's choice of route is unlimited. As it is not clear that the legislature intended that the right to transfer at connecting points should be limited, the court cannot add such a material qualification ·to the statute by construction. The Hotel street line and the King street line in fact become connecting lines at the point where the former enters King street after crossing the Nuuanu stream. They remain connecting lines to Liliha street. We hold therefore that the plaintiff was entitled at Palama junction to a transfer which would authorize her to ride back in ·a southerly direction toward Fort street, and that as a consequence she would be entitled to travel on such transfer to the terminus in that direction of the King street line. This the plaintiff would have been entitled to under the rule of the ·company in force at the time. See plaintiff's exhibit No. 1. We base our decision, however, upon our construction of the ·statute.

3. Whether the conductor on the King street car had the right to demand a fare and threaten to eject plaintiff if not paid.

The authorities on this proposition are in hopeless conflict. The law, as contended by the defendant, that a conductor of a railway is not compelled to take the word of a passenger, or ·of several passengers, as to whether or not the passenger is

entitled to ride, and that as between the conductor and such passenger the payment of the fare or the production of a ticket is the only evidence of such right which the conductor is obliged to accept, is fully supported by the following cases: *Crowley v. Fitchburg R. R.,* 70 N. E. Rep. 56 Mass.; *Townsend v. N. Y. C. Ry. Co.,* 56 N. Y. 295; *West. Md. Co. v. R. R. Co.,* 34 Atl. 880 Md.; *Frederick v. M. H. & O. R. R.,* 37 Mich. 342; *Boylan v. Hot Spgs. Ry. Co.,* 132 U. S. 146; *Hufford v. G. R. & I. Ry.,* 53 Mich. 118; *Bradshaw v. R. R.,* 135 Mass. 407; *Poulin v. Can. P. Ry.,* 52 Fed. 197; *Mackay v. Ohio R. Co.,* 11 S. E. 727, W. Virg.

The reason of the rule, as set out in *Bradshaw v. S. Boston Ry.,* is that the conductor cannot reasonably be required to take the mere word of a passenger that he is entitled to be carried by reason of having paid a fare to the conductor of another car, or even to receive and decide upon the verbal statement of others as to the fact. The conductor has other duties to perform, and it would then be impossible for him to ascertain and decide upon the right of a passenger except in the usual, simple and direct way. The circumstances would not be favorable for a correct decision in a doubtful case. In *Hufford v. G. R. & Ind. Ry. Co.,* 53 Mich. 120, Judge Cooley says: "No other rule can protect the conductor in the performance of his duties or enable him to determine what he may or may not lawfully do in managing the train and collecting the fares. If, when a passenger makes an assertion that he has paid fare through, he can produce no evidence of it, the conductor must at his peril concede what the passenger claims or take all the responsibilities of a trespasser if he refuses, it is easy to see that his position is one in which any lawless person with sufficient impudence and recklessness may have him at disadvantage, and where he can never be certain if he performs his apparent duty to his employer that he may not be subjected to severe pecuniary responsibility. Such a state of things is not desirable either for railroad companies or for the public." This is confirmed in the recent case of *Mahoney v. Detroit St.*

*Ry. Co.,* 93 Mich. 612. The court said: "It is a novel doctrine that one may compel the agent of another to accept without question, and without opportunity to investigate, his verbal statement that he has a contract with his principal and especially where frequent frauds upon the principal must invariably result as a consequence of such a doctrine. It was the plaintiff's reasonable and clear duty to pay his fare and seek redress from the defendant for a violation of his contract." In *Townsend v. N. Y. C. & H. R. R. R.,* the court bases its decision upon the further ground that conceding that the passenger was entitled to transportation, he had not the right to take the law into his own hands to enforce such right if denied by the agent of the carrier. The court said: "If, after this notice, he waits for the application of force to remove him he does so in his own wrong. He invites the use of the force necessary to remove him, and if no more is applied than is necessary to effect the object, he can neither recover against the conductor or company therefor. This is the rule deducible from the analogies of the law. No one has a right to resort to force to compel the performance of a contract made with him by another. He must avail himself of the remedies the law provides in such cases." In the recent case of *Monnier v. N. Y. C. & H. R. R. R. Co.,* 175 N. Y. 281, the duty of a passenger in a public conveyance to conform to all reasonable rules and to yield for the time being to the decision of the conductor of the car, in case the passenger has no ticket to show for his right to travel, is reaffirmed. The court said: "In this case the plaintiff acted upon the principle that if he could ultimately prove that the ticket office was not open when the train started, and that he could not procure a ticket, he had the right to refuse to pay the nineteen cents and to resist the conductor by force when he attempted to put him off. It would be difficult to show that such a principle has any support in reason, justice or authority. It is based upon the notion that the plaintiff had the right to be the judge of the controversy and to enforce what he deemed to be his rights with the strong arm, and if worsted in the struggle,

to sue the railroad for assault and battery. That, I think, is not the law; * * * but as in this case, when the conductor demands only what he has the right to demand by the statute and rules of the company, a passenger is not at liberty to assert and maintain by force some right that he may claim which grows out of facts not within the knowledge of the conductor, and which may render the rules inoperative and inapplicable. He is bound for the time being to yield to the reasonable practice and requirements of the officer in charge of the train and enforce any right which he may have against the company in some other and more proper way. By paying such a demand his cause of action is just as complete as if he forcibly resisted the demand and suffered himself to be ejected. His ejection in such case will add nothing to his cause of action." The plaintiff strongly contends that *Bradshaw v. R. R., Poulin v. Can. P. Ry.,* and *Mackay v. Ohio R. Co.* were determined on the ground of the contributory negligence of the plaintiff in not examining carefully the ticket given him and having the mistake corrected. It is true that the question of contributory negligence arose in those cases, but it does not seem to have been the controlling factor and does not weaken the reasoning of the court on the main proposition. On the other hand, it has been held that a passenger cannot be expected to make a technical examination of transfer slips which may be given him. *Lawshe v. Tacoma Ry. Co.,* 59 L. R. 350.

The principal cases cited by the plaintiff are: *Sloan v. So. Cal. Ry.,* 111 Cal. 668; *Hamilton v. Third Av. Ry.,* 53 N. Y. 25; *Murdock v. B. & A. R. R.,* 137 Mass. 293; *B. & O. R. R. v. Bambrey,* 16 Atl. 67 Pa.; *Head v. Ga. Ry.,* 7 S. E. 217, Ga.; *St. Louis A. & T. Ry. v. Mackie,* 9 S. W. 451; *Hufford v. G. R. & I. Ry.,* 64 Mich. 631; *Yorton v. M. L. S. & W. Ry.,* 54 Wis. 234; *W. Pac. Ry. Co. v. Pauson,* 70 Fed. R. 585; *N. Y. Lake E. & W. R. v. Winters,* 143 U. S. 60; *Lake Erie, etc., R. R. v. Fix,* 88 Ind. 381; *Ellsworth v. C. B. & Q. Ry. Co.,* 63 N. W. 584, Iowa; *Louisville & N. R. Co. v. Gaines,* 36 S. W. 174, Ky.; *Bonser v. N. Park St. Ry. Co.,* 97 Mich. 565; *Laird v. Pitts-*

*burg Trac. Co.,* 166 Pa. St. 4; *Gulf, etc., Ry. v. Halbrook,* 33 S. W. 1028, Texas; *Mabry v. City Elec. Ry. Co.,* 59 L. R. A. 590. Many of these cases may be distinguished from the case at bar, falling as they do into one or the other of the following two classes: First, cases in which the plaintiff had a ticket of some sort, and the question involved was the construction, effect or validity of such ticket. As was said in *Mahoney v. Detroit St. Ry. Co.,* 93 Mich. 612, such cases are not applicable to a case where a plaintiff attempted to ride without any ticket at all, relying solely on his right which he could only substantiate by his own statement. Coming within this class are: *Head v. Ga. Ry., Yorton v. M. L. S. & W. Ry., W. Pac. Ry Co. v. Pauson, N. Y. L. E. & W. R. R. v. Winters, Ellsworth v. C. B. & Q. Ry. Co., Louisville & N. R. Co. v. Gaines, Bonser v. N. Park St. Ry. Co., Laird v. Pittsburg Trac. Co., Gulf, etc., Ry. v. Halbrook.* Second, cases in which it appeared that the plaintiff relied upon the assurances and directions given by the agents of the carrier and it was held that he had a right to rely upon such assurances and directions. Within this class are: *Hamilton v. Third Av. Ry., Murdock v. B. & A. R. R., St. Louis A. & T. Ry. v. Mackay, Hufford v. G. R. & I. Ry., Lake Erie, etc., R. R. v. Fix.* Both of the foregoing classes of cases differ so substantially in their facts from the case at bar that we think they should not be here followed. The distinction referred to in the second of the foregoing classes is clearly recognized in Massachusetts, the plaintiff being held entitled to recover in *Murdock v. B. & A. R. R.* on the ground that he had a right to rely upon the statement of the defendant's agents, and that this circumstance distinguished the case from *Bradshaw v. S. Boston R. R.* *Hamilton v. Third Av. Ry.,* 53 N. Y. 25, specially relied upon by the plaintiff, was not followed in *Townsend v. N. Y. C. & H. R. R. R.,* 56 N. Y. 295, and was practically overruled by the latter case. In *Hamilton v. Third Av. Ry.* the car going no further, all the passengers were directed to transfer to another car. It evidently became the duty of the conductor of the second car to observe the passen-

gers who alighted from the first car, and a mistake made by him
would be at his own peril.   See *Mahoney v. Detroit St. Ry Co.,*
93 Mich. 614.  As to *Sloan v. So. Cal. Ry.,* 111 Cal. 668, coun-
sel differ as to whether at the time the ticket was taken up by
the first conductor she was informed that she might ride from
San Bernardino to San Diego on another train without any evi-
dence of her right to do so.   This fact does not appear in the
report of the case, but it is stated that on arriving at San Ber-
nardino she (the plaintiff) was required to change cars and
enter another train of the defendant.   We think the statement
fairly brings the case within the second of the above classes.   If
she was "required" to change cars it was not a step taken of her
own volition.   It may be fairly assumed that she was obeying
the instructions of the defendant's agents in making such
change.   She would be fully justified to rely upon such direc-
tions.   Aside from this consideration, we consider that *Sloan
v. So. Cal. Ry., B. & O. Ry. v. Bambrey,* 16 Atl. 67, and the
other cases relied upon by the plaintiff, in so far as they are
applicable to the present case, are outweighed by the cases first
above quoted cited by the defendant.

We hold therefore the regulation of the defendant company
requiring a passenger to pay the fare or present a transfer was
a reasonable one, and that the conductor of the King street car
was justified in directing plaintiff to leave said car for the rea-
son that she did not comply with such regulation.   This does
not deprive the plaintiff of her right of action against the
defendant for being improperly refused a transfer by the con-
ductor of the Hotel street car.   Her right of action accrued at
the time such transfer was refused.   As was said by Judge
Cooley in *Hufford v. G. R. & I. Ry. Co.,* 53 Mich. 120, the pas-
senger gains nothing by being put off the car and loses nothing
by paying what is demanded and staying on; and as was said in
*Monnier v. N. Y. C. & H. R. R. R.,* supra, by paying such a
demand plaintiff's cause of action is just as complete as if he
forcibly resisted the demand and suffered himself to be ejected.
His ejection in such case will add nothing to the cause of action.

In adopting the foregoing rule we do not desire to be understood as going any further than the facts in this case require. Each case of this nature must depend largely upon its own facts.

4. As to damages.

The plaintiff was not entitled to recover damages for being removed from the King street car, it not being contended that any undue amount of force was used by the conductor of such car in causing the plaintiff to alight from it. The defendant's instruction requested on this point should have been given. The plaintiff, however, was entitled to full compensation for the injury done her in the refusal by the conductor of the Hotel street car to give her the transfer demanded. This would include compensation for humiliation, wounded pride, mental suffering, shock to her feelings. or sensibilities and the inconvenience she suffered naturally occasioned by the incident, also bodily harm, if any were inflicted upon her. The tone and manner of the conductor and the publicity of the act in the refusal of the transfer might also be considered. *Mabry v. City Elec. Ry. Co.,* 59 L. R. A. 590; *Lake Erie, etc., R. R. v. Fix,* 88 Ind. 381; *Laird v. Pittsburg Trac. Co.,* 166 Pa. St. 4; *Sloan v. So. Cal. Ry. Co.,* 111 Cal. 668; *B. & O. R. R. v. Bambrey,* 16 Atl. 67. The jury evidently based their verdict in part upon the ejection of the plaintiff from the King street car, and as no damage can be allowed for this act, and as it may be assumed that the jury gave as much weight to that branch of the plaintiff's case as to the wrongful refusal of a transfer, we consider that the damages should be reduced one-half. Upon the plaintiff filing within ten days a remittitur for one-half of the damages named in the verdict, the exceptions will be overruled; otherwise a new trial is ordered. The case is remanded to the circuit court for the first circuit. The plaintiff is allowed costs in this court as well as in the circuit court.

*H. E. Highton* and *T. M. Harrison* for plaintiff.

*Castle & Withington* for defendant.