THEODORE W. DOWNS vs. THE NEW YORK AND NEW HAVEN RAILROAD COMPANY.

The plaintiff purchased of the defendants, a railroad company, a commutation ticket entitling him to ride in the cars of the defendants within certain limits for a certain length of time upon certain conditions. One of the conditions was that the ticket should be shown to the conductor on every passage and if not shown when called for that the regular fare should be paid. Upon one of his passages the plaintiff had by mistake left his ticket at home and was unable to show it when called for. Held—1. That the defendants had a right to demand of him the ordinary fare for the passage. 2. That the conductor, on his refusal to pay the fare when demanded, had a right under the rules of the company in such cases to eject him from the cars at the next station.

AMICABLE SUBMISSION to the Superior Court upon the following agreed statement of facts:

The plaintiff on and for some time before the 18th day of May, 1869, was the owner, by purchase from the defendants at the usual price, of a commutation ticket, which by its terms expired September 30th, 1869, and which was as follows: " New York & New Haven R. R. Co. Commutation Ticket. Theodore W. Downs. Between New York and New Haven. Expires Sept. 30th, 1869. No. 3199. J. T. Shelton, Treas." And on the back of the ticket certain conditions were printed as follows: " This ticket is received subject to

the following conditions, viz: It is not transferable; is to be shown to conductors every trip; is subject to all the rules of the company, and to the right of the company at its pleasure to alter the time of arrival or departure of trains, or diminish their number; is to be surrendered to the company at its expiration, and entitles its owner to ride, with his ordinary baggage only, between stations named on the ticket, and upon regular week-day passenger trains and no others. No part of the money paid therefor, is, in any event, to be refunded. When the ticket is not shown regular fare will be collected. Jacob Mendel, General Ticket Agent."

With this ticket the plaintiff, residing at Bridgeport, had been in the almost daily habit of taking the 7.08 A. M. passenger train at Bridgeport on the New York and New Haven railroad for New York city, where he was transacting business, and the fact that he was the owner of the ticket was known to the conductor of the train and to some other conductors upon the road, but not to all of them.

On the 18th day of May, 1869, the plaintiff took the 7.08 o'clock morning passenger train at Bridgeport, intending to proceed to New York city, as he had usually done, and for the purpose of meeting business engagements of importance. While the train was proceeding towards New York and before it had reached Fairfield station, next west of Bridgeport, S. S. Thomas, the conductor of that train, and who was the usual conductor of the train, and well acquainted with the plaintiff, and with the fact of his being the owner of such a ticket, made the usual requirement of him to exhibit his ticket. The plaintiff then discovered that he had inadvertently left his ticket at home, and so stated to the conductor, and also the fact already known to the conductor of his ownership of the ticket. The conductor nevertheless thereupon required of the plaintiff the payment of the usual fare, and upon his refusal to comply with such requirement, ejected him from the train when it arrived at Fairfield, using sufficient but not excessive or unnecessary force for that purpose.

A regulation of the railroad company made it obligatory upon all the conductors in the company's employ to require

passengers either to show their tickets or to pay the regular fare, and, upon the refusal of any passenger to comply with both of the requirements, to eject such passenger from the cars at a regular station, and the conductor acted in the present case in strict obedience to that regulation.

The plaintiff was thereupon obliged to procure conveyance back to his home at Bridgeport, and was delayed and damaged in his business, and subjected to great mortification and injury to his feelings by reason of the premises.

Prior to January 1st, 1869, the managers of the railroad had discovered that persons other than the owners of commutation tickets had traveled upon the road by virtue of commutation tickets which came into their possession from the owners of such tickets, the party in each case so using the ticket representing himself to be the person named in it. The company had also frequently been defrauded by persons falsely representing themselves to the conductors to be the owners of commutation tickets, and thereby obtaining passage on their trains. With a view to prevent the recurrence of such frauds the company, having had several meetings with the commuters generally on the railroad, adopted the regulations requiring commuters to show their tickets to the conductors every trip and to pay regular fare when the same should not be shown, which regulations were printed as conditions upon the plaintiff's ticket, and upon every other commutation ticket thereafter sold by the company, and were also printed as a circular and were distributed among the commuters and others on the road, and were delivered to each commuter with his ticket, and such printed circular was delivered to the plaintiff when he purchased his ticket; and copies of these regulations were conspicuously posted at the stations along the railroad; and the plaintiff at the time of his purchase of his ticket was well acquainted with the regulations and prior to the 18th day of May had complied therewith. These regulations having been enforced since January 1st, 1869, were found effectual to protect the company from the frauds before mentioned.

The question was submitted whether upon the foregoing

facts the plaintiff was entitled to recover any damages against the company; and it was agreed between the parties that, if the company was liable in the premises, the damages should be $250.

Upon these facts the case was reserved by the Superior Court for the advice of this court.

*Beardsley* and *Sumner*, for the plaintiff.

*Child* and *Barnett*, for the defendants.

PARK, J. The plaintiff purchased of the defendants a commutation ticket that entitled him to ride upon their road a certain length of time, upon certain conditions.

One of the conditions was that the ticket should be shown to the conductor on every trip the plaintiff might make, and in case it should not be shown when requested by the conductor that regular fare for that trip should be paid. On the occasion complained of the plaintiff by mistake left his ticket at home, and consequently was unable to show it to the conductor when requested to do so.

The conductor knew that he had purchased a commutation ticket of the defendants, but, acting in accordance with the terms of the contract and the instructions of the defendants, demanded of the plaintiff regular fare for the trip. The plaintiff insisted upon the right to ride in the cars upon his ticket without producing it, and, after informing the conductor that he had inadvertently left his ticket at home, refused to pay the fare for the trip, and was therefore ejected from the train at the next station.

These are the main facts of the case, and it is difficult to see what claim they establish against the defendants. It seems to be conceded that the plaintiff was liable to pay the regular fare for the trip, and his refusal to pay gave the defendants a right of action against him for the amount of the fare; but the claim is that the defendants had no right to eject the plaintiff from the train.

If the plaintiff had no right to ride in the cars on his

commutation ticket, then it follows that the purchase of the ticket, and the facts that are stated concerning it, have nothing to do with the case further than to show that the plaintiff believed he had a right to his passage by his ticket, and that his refusal to pay the regular fare was in consequence of such belief.

The question then is, had the defendants the right to eject the plaintiff from the train?

They had a regulation to that effect in cases like the present one, and the plaintiff was ejected in accordance therewith.

Was the regulation reasonable? It is difficult to see how this case can be distinguished from that of a common passenger, where a regulation requiring his ejection from a train should he refuse to pay the regular fare has been held to be reasonable. *Hibbard* v. *N. York & Erie R. R. Co.*, 15 N. York, 455. The same principle was recognized in *Crocker* v. *N. London, Willimantic & Palmer R. R. Co.*, 24 Conn., 249.

It is easy to see that the conductors of trains on a railroad cannot be expected to remember the length of time a commutation ticket has to run in each particular case, although it may have been repeatedly shown to them; and therefore, if railroad companies are bound to trust to the declarations of commuters, that the time has not expired, they are in danger of being defrauded in many cases. If it be said that a right of action is sufficient security, it should be observed that much vexation and expense attend the right where the demand is small and cases are numerous; so much so that the value of the right is greatly impaired even in cases where parties are able to respond in damages.

The only ground that has been suggested why a distinction should be made between the case of a commuter and that of a common passenger, is, that commuters must be supposed to be able to respond in damages to the amount of the fare of a single trip upon the road, and that they generally reside in the vicinity of the road, and consequently process can be easily served upon them. But the same might be said of a large class of common passengers, and no such distinction is

made in relation to them. And on the occasion complained
of the plaintiff was nothing more than a common passenger.
By the terms of his contract he agreed to pay the regular
fare for the trip, whenever his commutation ticket should not
be produced. It was not produced, and consequently the
ticket did not apply to the trip any more than it would if the
trip had been specially exempted from its operation. The
plaintiff was therefore nothing more than a common pas-
senger.

We therefore advise the Superior Court to render judgment
for the defendants.

In this opinion the other judges concurred.