CLARENCE H. JONES, APPELLEE, V. OMAHA & COUNCIL
BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED APRIL 3, 1914. No. 17,396.

1. **Carriers: ACTION FOR DAMAGES: DIRECTING VERDICT.** The plaintiff
entered a street car in South Omaha, July 24, 1909, intending to
go north through Omaha to Courtland Beach. He paid his fare.
At Thirteenth and Dodge streets, Omaha, he left the car, walked
south on Thirteenth street to Douglas street, west on Douglas
street to Fourteenth street, where he entered a store, and, after
making a small purchase, walked north along Fourteenth street
across Douglas and Dodge streets, and at the intersection of Four-
teenth and Dodge streets he entered a car going north on Four-
teenth street, and presented to the conductor in payment of his
fare a transfer slip on the Sherman avenue line punched "south"
of the day before, and asked for a Cuming transfer at Seventeenth
and Cuming streets, and also said he wanted a transfer on Locust
street to the Beach. On refusing to pay his fare and refusing
to leave the car, he was ejected from it, and brings suit for
damages. *Held*, That the evidence disclosed by the record fails
to sustain a verdict for the plaintiff, and that, a request being
made therefor, the jury should have been directed to find a ver-
dict for the defendant.

2. ———: TRANSFERS. A street car company has the right to col-
lect and receive fares and fix such reasonable rules concerning the
issuance and use of transfer slips as to prevent it from being
defrauded.

3. ———: ———. As between the conductor and the passenger,
the transfer produced must be regarded as conclusive as to the
rights of the latter.

APPEAL from the district court for Douglas county:
WILLIS G. SEARS, JUDGE. *Reversed with directions.*

*John L. Webster* and *William J. Connell*, for appellant.

*E. T. Farnsworth*, contra.

HAMER, J.

The plaintiff sues to recover damages because, as he
alleges, he was wrongfully ejected from one of the defend-
ant's cars. He got aboard one of its cars on the evening

of July 24, 1909, at Twenty-fourth and L streets in South Omaha. He testified that he intended going north to Courtland Beach. His route lay through Omaha. At Thirteenth and Dodge streets, Omaha, he left the car and walked south on Thirteenth street to Douglas street, and then walked west on Douglas street to Fourteenth street, where he entered the Palace Clothing Store, and made a small purchase. He then walked north along Fourteenth street across Douglas and Dodge streets, where at the intersection of Fourteenth and Dodge streets he boarded the car from which he was subsequently ejected. That car was going north on Fourteenth street. When he got aboard the Fourteenth street car at Dodge street, he presented the transfer which had been given him before he left the first car. When he presented his transfer, the conductor refused to accept it in payment of fare, and told the plaintiff that his transfer was not good, and demanded payment of the fare. When the car was standing still at Chicago street, the conductor informed the plaintiff he must leave the car or pay his fare. The plaintiff refused to pay, and refused to go. It is said not to have been the custom of the defendant company to issue transfer slips which give a privilege to the passenger to leave the car at any intermediate point on the line for the purpose of transacting his private business and then going as a foot passenger to some other street car line, there to present his transfer slip in payment of his fare on the other line. That is what the plaintiff seems to have done in this case. The plaintiff had received a transfer for the transfer point at Seventeenth and Cuming streets. It will be remembered that he left the car at Thirteenth and Dodge streets, a point about 12 blocks south from the transfer point named by the plaintiff. If the plaintiff received a transfer on a north-bound Thirteenth street car entitling him to transfer from that line at Cuming street and Seventeenth street, then he had no right to attempt a transfer at either Thirteenth or Fourteenth street car lines at the intersection with Dodge street. The plaintiff's conduct in leaving a car on the Thirteenth street line to do personal shop-

ping, and thereafter undertaking to use a transfer upon another car at a point which was *not* a transfer point, tends to indicate that the plaintiff was not acting in good faith.

The evidence tends to establish the custom in these matters, and apparently it is not the custom to leave a car on a street car line and to walk about, transacting business in the meantime, and then go to *another* line presenting a transfer which does not purport to be issued for use on that line. The plaintiff testified that he told the conductor that he wanted to go to Courtland Beach; that the conductor gave him a transfer on Seventeenth street, a Cuming street transfer; that he rode north on the Thirteenth street car to Dodge street; that he would go across to Fourteenth street, that it would not be crowded so much. He claimed to have done that at other times. He testified that he got off the car at Dodge street, and that he walked west to Fourteenth street, and then got on a closed car and *asked the conductor for a transfer on Locust street to Courtland Beach.* The plaintiff said he wanted a transfer on Locust street to the Beach, and the conductor said he would not give it to him. The plaintiff told the conductor, he testified, to give him a transfer, and the conductor said: "You will have to pay another nickel if you get a transfer." When the parties reached this sort of a controversy, the plaintiff says that he and the conductor called each other names. The plaintiff testified, "I told him to give me my transfer and I would get off and walk back, and he would not give it, so he grabbed me and jerked me around, and the motorman came out, and he said, "We can't hold that car here; and then the conductor put his knee against my back and gave me a shove out, and I went through the door." This brings us to the question as to which was right in the controversy.

As a part of this same matter it is proper to inquire what sort of a transfer the plaintiff presented when he boarded the Fourteenth street car. B. Van Horn was the conductor to whom the transfer was presented. He testified: "He got on at Fourteenth and Dodge, and I went

to get his fare, and he tendered me a Sherman avenue transfer punched 'south' on the day before, and I asked him if he didn't have another transfer, and he said, 'No,' that was his fare, that was all he had, and I told him that he would have to pay his fare if he didn't have another transfer, I went on and collected the rest of the fares, and went back and asked him again, and he said that he wouldn't pay, swore at me, and I stopped the car at Seventeenth and Webster streets and put him off with the help of the passengers." The conductor identified exhibit No. 1 as the transfer which was presented to him. He said of it that it was of the same color as "all on the Sherman avenue line, yes, sir;" that he turned it in the same evening; that he attached to it a "trouble" blank; that it was dated the day before he got it, "and that was the 23d, and I got it on the 24th;" that the plaintiff asked "for a transfer to Courtland Beach," and that he "refused to give it to him;" that the plaintiff refused to pay his fare. The witness explained to the court and jury the meaning of the punch marks at considerable length. Among other things, he said: "Q. Tell the jury what the originating line was. A. Sherman avenue, South Omaha, *going south.* Q. What line were you on that day? A. Sherman avenue line. Q. Going what direction? A. *North.* Q. Then, what is the fact as to whether, under the rules and custom of the company, a transfer to go *south* would authorize or permit a passenger to ride *north?* A. *It would not.* Q. What has been the rule and custom as to whether or not transfers issued from the cars of the same identical line, for instance, going north or south on your line, would a transfer be issued on that same line enabling a party to get off and do shopping, and then get back on the same car? A. No, sir. Q. On to another car on the same particular street and line? A. No, sir. Q. Were these the reasons why you declined to accept this transfer? A. *Yes, sir.* Q. And, under the custom that prevailed and your knowledge of the rules of the company, could you accept this transfer? A. *No, sir.* Q. Did you make that known to this man Jones? A. Yes, sir. Q. And

when you made that known, and refused to accept this transfer for passage, and demanded fare, what did he say? A. Said he didn't have another transfer, and said that was his transfer, and he wanted a Courtland Beach, and I told him I could not take the transfer for fare, that it was no good." The plaintiff resisted being ejected from the car, and, according to the testimony on both sides, there was more or less swearing, which it is unnecessary to repeat. Further along the witness testified: "Q. Under the rules of the company, is there any custom that would authorize or permit a party to get off a north-bound car on the Thirteenth street line and go back south on the south side of Douglas street and do shopping, making a purchase, and then walk from that point, namely, the southeast corner of Fourteenth and Douglas, to Fourteenth and Dodge, and board and ride on a car on a transfer on a Thirteenth street line going north? A. No, sir. Q. Is there any custom under which a party would have a right to use a transfer that gave him the right to make a transfer on a car line going south to use that same transfer to go north? A. No, sir." On cross-examination this witness testified: "Q. How far, then, had the car gone before you met him again? A. Seventeenth and Cass. Q. That is after you had gone up by the north side of Jefferson Square and got up to Seventeenth and Cass? A. Between Sixteenth and Seventeenth and Cass. Q. Then, you asked him for the fare again? A. Yes, sir. Q. Now, what did he say? A. Said he would give me his fare, and he gave me his transfer again. Q. What did he say? A. Said he would pay me, and he handed me the transfer again; he took the transfer back once and gave it back to me again, and I told him it was no good, and he wanted a transfer to East Locust, and I told him I could not give him one on that transfer, to pay his fare, and I would give him one; he said that he wouldn't pay no fare." The witness testified that, when he went to put the plaintiff off the car, the plaintiff had hold of him, "had a hold of my necktie, and nearly tore it off." There does not seem to have been any very serious injury as the result of the struggle

to put him off the car, so that we will not spend much time on that.

B. W. Bennett, a conductor, was sworn as a witness on behalf of the defendant, and was shown the transfer, exhibit No. 1, and, from an examination of it, testified that it was issued "on the Sherman avenue line *going south;*" that it permitted the passenger to ride *south;* that, under the custom or rules of the company, the conductor would not be authorized to receive or accept that transfer for fare from a passenger *going north;* that it was not the custom to receive a transfer of that kind on the Fourteenth street line *going north.* He further testified: "Q. Would you accept a transfer where the party was going the opposite direction than that allowed or indicated by the transfer? A. *No, sir.* Q. Where a party got off the Thirteenth street line at Dodge and walked back to Douglas and did shopping, and then walked north on Fourteenth street to Fourteenth and Dodge, and had a transfer punched for Seventeenth and Cuming, would that transfer be good on the Fourteenth street line going north, according to the custom or rule of the company? A. *No, sir.*" The transfer slip itself shows that it was a *south bound* transfer slip issued on the 23d of July, and not on the 24th.

W. L. Musgrave testified that he was superintendent of transportation of the defendant street railway company; that he had been connected with it 23 years; that, by reason of his experience in connection with the company and duties required to be performed, he was familiar with the operation of cars on the different lines, and knew the custom that existed with reference to the issuance and receiving of transfers for fares; that he was not on the car from which the plaintiff was ejected, and that he did not know what had happened there; that he had heard the testimony of the witnesses Van Horn and Bennett. "Q. I will show you the transfer that has been offered in evidence in this case, which the reporter has marked exhibit No. 1, and will ask if you have examined that before, so as to know what it relates to? A. Yes, sir; it came into my hands the next morning.  *   *   *   Q. What is the fact

as to whether or not that transfer which you now hold in your hand, marked exhibit No. 1, under the rules of the company, or according to the custom, would be good going *north?* A. *No, it would not be good.* Q. Under the rules of the company, would a conductor be permitted or authorized by those rules or custom to accept or receive that transfer for passage on a *north bound car?* A. *No, sir."*

The plaintiff was called and testified by way of rebuttal that the passengers did not help pull him off the car. He did not deny the testimony concerning the alleged fact that the transfer which he held would not entitle him to go north. He had testified at his examination in chief that he paid his fare and asked for a transfer to Courtland Beach; that the conductor gave him a transfer on the Seventeenth street line, a Cuming transfer; that he asked for a transfer at Seventeenth and Locust; that the conductor did not object to the transfer offered until he asked for the transfer at Seventeenth and Locust; that at that time he had ridden two blocks on the car; that he said to the conductor: "I wanted a transfer on Locust street to the Beach, and he said he could not give it to me; he said that was a Dodge transfer. I told him it was not, because I just got off at Thirteenth and walked from there." He then describes what happened between him and the conductor; that the conductor wanted him to pay another nickel; that he told the conductor he was not going to get off unless the conductor gave him his transfer. The plaintiff testified that he had before ridden on a Fourteenth street car immediately north from Dodge street on a transfer like the one he was then riding on, and before the day in question; that he had been doing that, and did not know that it was against the rules; that he had been doing that two or three months. His excuse for doing it seems to have been to avoid the Sherman avenue crowded car.

The plaintiff has neglected to brief his case. We are not very clear as to what his theory may be, but we are unable to justify a disregard of the rules of the company by its conductors. We see no excuse for disregarding the

rule that transfers north go north, and transfers south go south, and a transfer to go south on the 23d of July is not a transfer to go north on the 24th of July.

If it is suggested that it was for the jury to find whether excessive force was used by the conductor in putting the plaintiff off the car, it may be answered that the plaintiff testified that he resisted being put off, and that he held on to the seat, and afterwards held on to the handrail on the platform; and it is fully shown that he made a most stubborn resistance; that one of the things which he did was to get hold of the necktie of the conductor and hang on to it; and he does not say or attempt to prove that more force was used than was necessary to overcome his resistance and eject him. For the reason that the evidence is insufficient to sustain a verdict for the plaintiff, the district court should have directed the jury to render a verdict for the defendant.

It is in evidence that the plaintiff asked for and supposed that he had received a transfer slip entitling him to transfer at Seventeenth and Cuming streets. That is certainly conclusive against his right to attempt to transfer and use a transfer slip at either Thirteenth or Fourteenth and Dodge streets, and defeats his cause of action. *Keen v. Detroit Electric Railway*, 123 Mich. 247.

As disclosed by the plaintiff's own testimony that he attempted to use a transfer slip at a point which was not a transfer point, and upon a street car line to which it was not issued, the conductor was justified in ejecting him. *Shortsleeves v. Capital Traction Co.*, 35 Wash. Law Rep. 4.

When the conductor refused to receive the transfer slip presented on the Fourteenth street line, it was the duty of the plaintiff to either unconditionally pay his fare in cash or to leave the car. *Norton v. Consolidated R. Co.*, 79 Conn. 109, 4 Am. Street R. Rep. 114, 118, and cases there cited.

While the amount of the judgment is for only $80, the principle involved in the case is important, because it includes a consideration of the right of a street railway company to collect and receive fares, and to fix reasonable

rules concerning the issuance of transfer slips and the use of the same in such manner as to prevent it from being defrauded. As between the conductor and the passenger, the transfer produced must be regarded as conclusive as to the rights of the latter. This principle receives support in *Frederick v. Marquette, H. & O. R. Co.*, 37 Mich. 342. "As between the passenger and the conductor of the car in which he is, the terms of the ticket or check are conclusive, and the right to ride upon it on that train is, for the time being, to be determined accordingly." Baldwin, American Railroad Law, p. 292, *Mosher v. St. Louis, I. M. & S. R. Co.*, 127 U. S. 390. A rule requiring an expulsion from a car of a passenger who refuses to either pay his fare or produce a ticket showing his right to ride on such car is a reasonable one. *Norton v. Consolidated R. Co.*, 79 Conn. 109, 4 Am. Street R. Rep. 114; *Downs v. New York & N. H. R. Co.*, 36 Conn. 287.

In the instant case, there seems to have been no abuse of which the plaintiff had a right to complain. The judgment of the district court is reversed and the cause is remanded, with instructions to render a judgment for the defendant.

REVERSED.

LETTON and ROSE, JJ., not sitting. SEDGWICK, J., concurs in conclusion.